## McClintock ad. vs. Lary et al.

In a suit by the owners of a boat, the certificate of enrollment in the name of the plaintiffs, and the statement of the clerk that he always considered the plaintiffs to be the owners, is sufficient evidence, in the absence of any opposing proof, of ownership.

Where the owners of a boat make a contract for freight, there is an implied contract that the boat is sea-worthy; and in an action for breaking such contract, it is incumbent on the plaintiffs to prove that at the time when the contract was to be performed, the boat was still sea-worthy and capable of performing it.

The testimony of a witness, that upon an injury to a boat, whereby she was compelled to throw overboard a part of her cargo, her open policy of insurance became void, without proof of any peculiar knowledge on his part, or that such was the established commercial custom, or that he was competent to prove such custom if established, held to be properly excluded in an action by the boat to recover damages for breaking a contract of affreightment.

Where the question of damages is fairly left to the jury, this court will not set aside the verdict for excessive damages unless there be good ground shown.

*Appeal from Lafayette Circuit Court.*

Hon. Len B. Green, Circuit Judge.

Gallagher and Knight, for the appellant.

The court clearly erred in refusing to permit the defendant to prove that if, after the accident, the cotton had been shipped, by the *established custom*, it would be at the risk of the shipper, and could not be covered by insurance, either by the open policy of the boat, or by any other policy. "The custom of the place is to be observed," (6 *Co.* 69.) and the proof of the established custom would have released the defendant from all claim for damages. The sea-worthiness of the boat of a carrier is implied in the undertaking of a carrier by water, and it is also a necessary condition to the attaching of any insurance to the

cargo.. 1 *Phil. on Ins. secs.* 734, 975 695. The right to be in position to effect an insurance, if the shipper desire it, is a part of the contract implied on the part of the carrier, and which only by express agreement is modified or superseded. 1 *Phil. on Ins. sec.* 698; 1 *Greenl. Ev. secs.* 4, 5, 6; *Gibson vs. Stephens,* 8 *How.* (*U. S.*) 384.

The damages were excessive in allowing the whole amount of the freight, without taking into consideration the time and expenses saved to the boat.

As the plaintiffs sue as owners upon a contract not made with them, the allegation of ownership is a material averment without proof of which they cannot recover. *Carmichael vs. Trustees, etc.,* 3 *How.* (*Miss. R.*) 84. The enrollment was made by Lary, for himself and Chambers, and is no proof of ownership, being nothing more than their own declaration. 1 *Greenl. on Ev. sec.* 494; *Lyon vs. Orleans co.,* 7 *Lou. R.* (*N. S.*) 678.

GARLAND & RANDOLPH, for appellees.

As the boat was sea-worthy and in a suitable condition to perform the contract, and actually offered to perform it at the proper time, she was in no default, though she might have been, previously, and after the making of the contract, disabled and unseaworthy. The defendant's intestate having violated his contract without fault on the part of the plaintiffs was liable to damages. 2 *Parsons on Con.* 492; 20 *Barb.* (*N. Y.*) 509; 13 *Texas,* 532.

When a boat has received an injury from accident, and is afterwards repaired, and rendered as seaworthy as before, her capacity and right to carry goods, etc., covered by open policies remains as before the accident. The question is, was the boat seaworthy when the policy attached; and if she was not, did she become so during the voyage and before the breach? If so, the liability of the insurers under the policy is fixed. *Par. Mer. L.* 424, 429; 11 *Pick.* 226; 10 *Mass.* 192.

It is clearly proven that the plaintiffs owned the boat, that the contract was made and broken by the appellant's intestate,

OF THE STATE OF ARKANSAS. 217

TERM, 1861.]                    McClintock ad. vs. Lary et al.

as stated in the declaration, and that the appellees sustained damages to the full amount found by the verdict.

Mr. Chief Justice ENGLISH delivered the opinion of the court.

In the spring of the year, 1856, the steam-boat R. M. JONES, was running in the Orleans and upper Red river trade. About the 12th of March, on her up trip, she stopped at a landing called *Conway*, in Lafayette county, where Thomas R. McClintock, a Red river planter, had 200 bales of cotton ready for shipment, and made a contract with his agent, which he afterwards approved, to carry the cotton to New Orleans, on her down trip, at $4 50 per bale; and her clerk made a memorandum of the contract in a book kept for such purposes. After the contract was made, she went up the river to her point of destination, and returned to *Conway* in good time, and applied for McClintock's cotton, but was informed that he had shipped it upon another boat which had offered to take it at a less price per bale than she had agreed to carry it for.

Afterwards her owners, John M. Lary and William H. Chambers, brought assumpsit against McClintock, in the Lafayette Circuit Court, for breach of the contract of affreightment. Pending the suit, the defendant departed this life, and the cause was revived against James R. McClintock, his administrator.

The case was tried upon the general issue, verdict and judgment in favor of the plaintiffs for $900 damages, and a motion for a new trial overruled.

1. It is insisted for the defendant, who appealed from the judgment, that the plaintiffs failed to prove upon the trial that they were the owners of the boat.

She was registered in the names of the plaintiffs as her owners, before the proper officer, at the port of New Orleans, under the laws of the United States, on the 17th of August, 1854, as proven by the certificate of enrollment, which was read in evidence without objection.

*Edward Groves*, who was on board as her clerk, at the time

the contract sued on was made, also deposed, in general terms, that he always considered the plaintiffs to be her owners.

In the absence of any opposing proof, her certificate of enrolment, and the statement of her clerk were sufficient evidence that the plaintiffs were the owners of the boat.

2. An attempt was made upon the trial to discharge McClintock from liability upon the contract, on the ground that the boat, on her down trip, before she reached Conway, was disabled by a snag, and consequently not in a condition to perform her part of the contract, although McClintock had, before her return to his landing, in violation of his agreement, shipped his cotton upon another boat, without knowledge of the accident which happened to the R. M. JONES, and perhaps before it occurred.

There was an implied undertaking on the part of the owners of the boat, at the time the contract was made, that she was river worthy, and had sufficient men, officers, stores, etc., etc., to enable her to perform her part of the agreement. *Smith's Merc. L.* 381, *and note.* And it was doubtless incumbent on the plaintiffs to prove that at the time the boat applied at McClintock's for his cotton, she was still river worthy, and capable of performing the contract.

Cooper deposed that he was steamboat hull inspector and general river agent for the board of underwriters of New Orleans, and in his capacity as such, examined the *R. M. Jones*, on the 22d of February, 1856, found her perfectly river worthy, and issued to her a certificate that her cargo would be covered by open policies of insurance. That cargo certificates lasted for twelve months; and that if, in the meantime, a boat was injured, or otherwise needed repairs, the underwriters ordered her into dock to be repaired, which was not necessary during that year with the *R. M. Jones.*

McCormick, the carpenter of the boat, deposed that she was river worthy at the time she applied at McClintock's landing for his cotton, in pursuance of the contract, and reached New Orleans safely, and in due time.

John Waggoner, a witness for the defendant, testified that on her way down Red river, she struck a snag, about twenty-five or thirty miles above McClintock's landing, which knocked off an entire plank about two feet below her guard and about half way between her bow and "midship." That a large quantity of cotton was thrown into the river from her injured side, which caused her to creen over upon her opposite side, and prevented the water from rushing in at the hole made by the snag; and she was repaired by putting on a new plank, and then went on down the river, picking up the cotton bales which had been thrown overboard.

We are of the opinion that a temporary injury thus received by the boat, which was immediately repaired, and did not permanently disable her, or render it necessary to go into dock to be repaired, before she was capable of complying with her contract to carry down, with usual safety, McClintock's cotton, did not discharge him from liability for violating his part of the agreement; and that the court below did not err in refusing to instruct the jury to the contrary, as moved by the counsel for the defence. See 1 *Phillips on Insurance sec.* 734, 975.

3. The defendant introduced a witness by the name of William A. McKnight, by whom he offered to prove, as stated by the bill of exceptions, " that so soon as the R. M. Jones had received an accident or injury, whereby she was compelled to throw overboard her cargo, or a portion thereof, in order to save herself, her cargo certificate became void, to the extent that she could receive no more cargo or freight—that if she did, her open policies of insurance would not cover the same—that any freight that she might take could not be insured under or by virtue of her open policies of insurance."

Which, upon the objections of the plaintiffs was ruled out by the court, and this was made one of the grounds of the motion for a new trial. Where the witness resided, what his occupation was, or what experience or knowledge he had about the matter, which the defendant offered to prove by him, is not

shown, nor did the defendant propose to show that what he offered to prove by the witness was an established commercial custom or usage, such as would govern the rights of the parties to the suit—or that the witness was competent to prove such custom if it was established. The court did not err in excluding the testimony of the witness in the form in which it was offered. 2 *Greenl Ev. sec.* 252.

4. It is also insisted for appellant that the damages assessed by the jury were excessive.

It was proven upon the trial that before the R. M. JONES reached McClintock's landing, on her down trip, she was offered as much as four or five hundred bales of cotton at $5 per bale, which she declined to take in consequence of her engagement to carry his cotton; and that because of her failure to get his cotton, she had to go to New Orleans without a full load. And the clerk of the boat expressly stated that the loss, sustained by the boat in consequence of her not getting McClintock's 200 bales, was equal to $900, the amount of freight which she was to have been paid for taking the cotton down.

The question of damages was fairly left to the jury, by the instructions of the court, and there is no good ground for us to set aside their verdict.

The judgment must be affirmed.

Mr. Justice COMPTON absent, and during the remainder of the term.