SIMS *v.* ROBERTS.

4-3393

Opinion delivered March 5, 1934.

*V. D. Willis* and *Shinn & Henley*, for appellant.

*J. Loyd Shouse* and *Cotton & Murray*, for appellee.

BUTLER, J. At an undisclosed date J. L. Sims and the appellant, Ora Sims, became husband and wife, and thereafter, on the 20th day of October, 1930, they entered into a written contract, the material parts of which may be summarized as follows: an indebtedness was acknowledged by J. L. Sims due Ora Sims in the sum of $5,000, without interest, to be due and payable upon the condition that J. L. Sims died before Ora Sims, otherwise the "debt fund" should revert to the estate of J. L. Sims, and the agreement would be null and void. For security of the payment of the aforesaid sum, certain bank stock of the par value of $5,000 was pledged, assigned and transferred, and attached to the original contract to be held by the First National Bank, which bank was authorized upon the death of Sims to deliver to Ora Sims, in the event the estate did not pay the $5,000, the stock certificates to be sold and their proceeds in excess of the amount of $5,000 to be paid to the estate. It was recited that the amount mentioned above was the balance of the sum of $17,528, of which sum Ora Sims acknowledged receipt of $12,528 in cash, which, together with the $5,000 mentioned in the contract, constituted the $17,528 paid and to be paid to Ora Sims in consideration of her releasing all claim in and to the estate of J. L. Sims, both real and personal, including dower and homestead rights in and to all real property. In the event Ora Sims survived her husband, she was obligated to execute to his legal representatives all necessary documents to effectuate the agreement on her part. As a condition to the payment to Ora Sims of the balance named, it was provided "that

she perform the agreements and covenants set out, including her executing a full release to the estate as mentioned, it being understood and agreed by and between the parties hereto that the said sum of $17,528, of which the said sum of $5,000 is the balance to be paid, is in full settlement of all property rights, including dower and homestead, as between the said J. L. Sims and Ora Sims, husband and wife, and the same is made in consideration of the agreement entered into before their marriage, and in consideration of marriage, the same not having been reduced to writing until this date.''

A further and final provision was to the effect that Ora Sims should care for J. L. Sims during any sickness or infirmity, and that, should she desert him, the contract would be void.

J. L. Sims died, and John Roberts was appointed administrator of his estate. Ora Sims presented to him, with the contract attached, her claim for $5,000, duly sworn to as prescribed by statute. This claim was disallowed by the administrator and also by the probate court. When the case reached the circuit court on appeal, the administrator interposed a demurrer on the ground that the claim ''does not state facts sufficient to constitute a cause of action in that the contract upon which said claim is based is not a valid and binding contract against the estate of Dr. J. L. Sims, deceased.'' The court sustained the demurrer and dismissed the claim, from which judgment is this appeal.

To sustain the action of the trial court, the appellee relies on the statute of frauds, § 4862, Crawford & Moses' Digest, as follows: ''No action shall be brought: * * * Sixth. To charge any person upon any contract, promise or agreement that is not to be performed within one year from the making thereof, unless the agreement, promise or contract upon which such action shall be brought, or some memorandum or note thereof, shall be made in writing, and signed by the party to be charged therewith, or signed by some other person by him thereunto properly authorized.'' Appellee also relies on § 7028 of the Digest under the head of ''Marriage Contracts,'' as follows: ''All marriage contracts whereby any estate, real or per-

sonal, is intended to be secured or conveyed to any person, or whereby such estate may be affected in law or equity, shall be in writing and acknowledged by each of the contracting parties, or proved by one or more subscribing witnesses." He cites the case of *Galbraith* v. *Cook,* 30 Ark. 417, the second syllabus of which is as follows: "A marriage contract must be reduced to writing and acknowledged under our statutes."

The learned trial judge did not indicate on what theory he held the contract invalid. It might have been his opinion that an oral antenuptial contract, being within the statute of frauds, could not subsequently be validated by reduction to writing after the marriage. There is respectable authority to support this view. *Smith* v. *Greer,* 3 Humph. (Tenn.) 118; *Read* v. *Livingston,* 3 John. Ch. Rep. 481; *Wood* v. *Savage,* 2 Doug. (Mich.) 316. There are equally respectable authorities holding that a parol antenuptial agreement, where the marriage has been consummated on the faith of the same, reduced to writing after the marriage, is sufficient compliance with the statute. We find it unnecessary to pass upon this question because, in our opinion, the contract having been reduced to writing and signed by the parties, it is sufficient to make it valid between them and their privies whether it be treated as an antenuptial agreement reduced to writing or a post-nuptial settlement. There can be no doubt but that a husband may dispose of his property or provide for its disposal by any method he may deem proper which will be binding against all except creditors. If the contract be treated as having been made in consideration of a parol antenuptial agreement, it will appear by its recitals that there has been a substantial part performance. Ora Sims, having been paid in cash the sum of $12,528, and the marriage consummated, the presumption is that she and J. L. Sims lived together as husband and wife until the death of the former. As pointed out by Bishop in the first volume of his treatise on Law of Married Women, parol antenuptial agreements were valid at common law, and are not made void by statute. Our statute is a re-enactment of the English Statute of Frauds (29 Car. 2), and, in commenting upon

its language, Mr. Bishop, at § 807, vol. 1, p. 605, *supra,* has this to say: "Incautious persons have sometimes, not looking at the exact words of the statute, supposed that, if an agreement is founded on the consideration of marriage, and is not in writing, it is therefore void. But that is not what the statute says. It simply says that 'no action shall be brought whereby to charge any person upon' this parol agreement. For example, if the parol agreement has been executed, the rights of property acquired under it are as secure as if the contract had been written and duly signed. Therefore, although marriage, following a parol antenuptial agreement, is not even a part performance of it, to take the case out of the statute of frauds, yet, if there is such an antenuptial agreement founded on this consideration of marriage, and it is voluntarily carried out while the coverture lasts, it is, on the death of one of the parties, binding as between his representatives and the party living."

This court, in the case of *Storthz* v. *Watts,* 125 Ark. 393, 188 S. W. 1166, cited with approval in *Newton* v. *Mathis,* 140 Ark. 252, 215 S. W. 615, lays down the rule that a substantial part performance of a contract is sufficient to take a verbal contract from within the statute.

The test of the validity of the marriage contract is whether or not it would bar the widow of her right of dower in the estate of her deceased husband. In the instant case, Mrs. Sims, having acknowledged the existence of the antenuptial agreement and the receipt of a substantial part of the sum stipulated to be paid, could not be permitted to renounce the contract simply because it had not been reduced to writing before the marriage. This is true because the parol antenuptial agreement, not being void but merely unenforceable, the part performance subsequently acknowledged in writing rendered it enforceable against the wife and consequently against the representatives of the deceased husband.

The headnote in the case of *Galbraith* v. *Cook, supra,* failed to notice that the written contract might be proved by subscribing witnesses without the necessity of a formal written acknowledgment. That case is therefore no

authority for holding that the contract in the case at bar is void. It is true that it has not been proved and recorded as provided by §§ 7029-30 of Crawford & Moses' Digest, but by § 7032 it will be noticed that these sections do not apply as between the parties to a contract and such as have actual notice thereof. In this case the administrator occupies the same relationship to the appellant with respect to the contract as did her husband, and therefore the failure to prove and record the contract does not render it invalid as to him.

There is no contention before us that there was any fraud practiced in the procurement of the contract, that any of its material recitals are false, or that the rights of creditors are involved. We therefore cannot consider any of these questions, and, if any such exist, they may be raised on a remand of the cause.

From what we have said, it follows that the trial court erred in sustaining the demurrer. The judgment is therefore reversed, and the cause remanded, with instructions to overrule the demurrer, and for further proceedings in accordance with law and not in conflict with this opinion.