**In re ESTATE OF Chester Dallas WISEMAN, Jr., Deceased.**

Court of Appeals of Tennessee, Western Section, at Nashville.

Sept. 7, 1994.

Publish Pursuant to Tenn.Ct.App.R. 11.

Nathan Harsh and C. Tracey Parks, Gallatin, for appellant, Violet Wiseman.

Jack W. Robinson, Sr., Jeffrey Mobley, Gullett, Sanford, Robinson & Martin, Nashville and John R. Phillips, Jr., Phillips & Ingrum, Gallatin, for appellees, Alan Wiseman and Brent Wiseman.

FARMER, Judge.

Appellant, Violet Crawford Roaden Wiseman, asks us to consider whether she is entitled to receive an elective share of her deceased husband's estate pursuant to T.C.A. § 31–4–101 et seq.[1] The record reveals that Chester Dallas Wiseman, Jr. died May 11, 1992, leaving his last will and testament dated March 22, 1982. The will named his then wife, Joyce Hammontree Wiseman as executrix and devised all property to her. The record further reveals that Joyce Wiseman predeceased her husband. In this event, the will provided that the entire estate be devised and bequeathed to Mr. Wiseman's two sons, Brent and Allen Wiseman, the appellees in this case. The trial court held that a document entitled "Antenuptial Agreement," executed by Violet and Chester Wiseman seven days after their marriage, which waived her statutory right to an elective share of his estate, was valid and enforceable. Ms. Wiseman now appeals from the judgment of the trial court denying her petition for an elective share, year's support and

---

1. **Right to elective share.**—The surviving spouse shall have a right of election to take an elective share of one-third (⅓) of decedent's net estate as defined by § 31–2–103(b).

exempt property. The following issues are presented for review:

1. Petitioner, Violet Roaden Wiseman, is entitled to dissent from her husband's will pursuant to T.C.A. 31–4–101 and take her elective share.

2. The writing titled "Antenuptial Agreement" fails for lack of consideration.

3. The "Antenuptial Agreement" is not entitled to be enforced due to its failure to comply with statutory requirements for entering into such agreements.

Appellees present the following additional issues:

1. Whether the Chancellor correctly held that postnuptial agreements are valid in Tennessee.

2. Whether this court should consider arguments raised by Appellant regarding enforceability of the Agreement for the first time on appeal and, if so, whether these new arguments justify reversal.

Violet and Chester Wiseman married on June 8, 1990. On June 15, 1990, the two executed the agreement, which provides, as herein pertinent:

WHEREAS, each of the parties own real property in their own names; and

WHEREAS, Chester Dallas Wiseman, Jr. and Violet Crawford Roaden expect to be married in the near future; ...

WHEREAS, it is the desire of the parties that only the property, as set forth herein, belonging to said parties before the marriage, shall be the sole and separate property of each party with all rights and privileges therein as though they were unmarried, each party owning his or her property separately and free from all marital rights of the other, and each party shall have the right to sell mortgage, transfer and convey his or her herein stated property without the joinder of the other in any instrument or conveyance; and,

. . . .

... Violet has agreed to accept the provisions of this Agreement in lieu of all

marital rights in the aforementioned real property [2] ... or the proceeds from the sale of said property ... which rights would accrue to her upon his death which she would otherwise acquire as the surviving spouse of Dallas; ....

Violet hereby waives and releases all statutory rights that she may have as the surviving spouse of Dallas to the real property ... or the proceeds from the sale of same as long as such proceeds are segregated and not commingled to become joint property.

. . . .

WHEREAS, Dallas has been advised that as a result of his marriage to Violet, he shall, if he survives her as her husband, acquire certain rights in the property and estate of Violet; ...

. . . .

... Dallas has agreed to accept the provisions of this Agreement in lieu of all marital rights in the aforementioned real property listed as belonging to Violet or the proceeds from the sale of any or all of said property [3] ... which rights would accrue to him upon her death which he would otherwise acquire as the surviving spouse of Violet....

Dallas hereby waives and releases all statutory rights that he may have as the surviving spouse of Violet to Violet's aforementioned real property....

. . . .

WHEREAS, Violet consents for Dallas to execute his Last Will and Testament as long as it is not inconsistent with the terms of this Agreement.

. . . .

This is the complete agreement of the parties and may not be altered or amended, except in writing, signed by the parties thereto.

The agreement further provides that each shall have "unrestricted testamentary discretion" over the "household furnishings," and "jewelry, clothing and personal effects" ac-

---

**2.** The agreement states that Mr. Wiseman is the owner in fee of two separate residences.

**3.** It provides that Ms. Wiseman is the owner of two individual residences, undeveloped land totaling approximately 37 acres and a one-half interest in three rental residences.

quired at the time of the agreement. The parties also had such discretion as to all identifiable assets in the form of cash, stocks and bonds.

On appeal, Ms. Wiseman contends that the agreement is not valid as it was entered into after marriage. Specifically, she states that T.C.A. § 36–3–501, pertaining to prenuptial agreements, contemplates an enforceable property settlement agreement if entered between prospective spouses prior to the solemnization of marriage. T.C.A. § 36–3–501 reads:

> **Enforcement of antenuptial agreements.**—Notwithstanding any other provision of law to the contrary, except as provided in § 36–3–502, any antenuptial or prenuptial agreement entered into by spouses concerning property owned by either spouse before the marriage which is the subject of such agreement shall be binding upon any court having jurisdiction over such spouses and/or such agreement if such agreement is determined in the discretion of such court to have been entered into by such spouses freely, knowledgeably and in good faith and without exertion of duress or undue influence upon either spouse.

■ The agreement in question, regardless of how named, was entered into after marriage. Postnuptial agreements, such as reconciliation agreements, have been recognized in Tennessee. *See, e.g., Gilley v. Gilley,* 778 S.W.2d 862 (Tenn.App.1989). This Court in *Gilley* stated that reconciliation agreements are in the nature of prenuptial or antenuptial agreements and should generally be governed by the same principles. Furthermore, prenuptial agreements are to be interpreted and enforced as any other contract. *Gilley,* 778 S.W.2d at 863. Although the contract in the case at bar can neither be exclusively defined as "antenuptial" or "reconciliatory," we hold it subject to the same prerequisites and conditions for enforcement and validity as any other contract.

■ Ms. Wiseman contends that the agreement fails for lack of consideration.

The appellees counter that this issue is raised for the first time on appeal. Ms. Wiseman argues that the agreement fails for lack of consideration because at the time the agreement was entered into, the parties were already married. Thus, the consideration of marriage is past consideration and insufficient. Further, the writing is unsupported by new consideration. As this argument relates to the timing of the document's execution, which was addressed by the trial court,[4] we will consider the issue.

The parties agree that the marriage was not consideration for the contract. Appellees have cited the Alabama Supreme Court case of *Tibbs v. Anderson,* 580 So.2d 1337 (Ala. 1991), in support of their argument that there is adequate consideration for the agreement. In *Tibbs,* a widow petitioned the court for an elective share of her deceased husband's estate. Prior to the couple's marriage, she was asked to sign a prenuptial agreement. *Tibbs,* 580 So.2d at 1338. She refused, but two hours after their marriage, she agreed to execute the agreement. She testified that she had read the agreement and understood it. The agreement provided that neither would seek an interest in the real estate and certain personalty owned by either prior to their marriage. *Id.* The trial court held the agreement valid and denied Ms. Tibbs' petition for an elective share. On appeal, she argued that the agreement was not supported by adequate consideration. *Id.*

*Tibbs* noted that postnuptial agreements are valid in the state of Alabama. *Id.* at 1339. The court further stated:

> In order for an agreement to be valid, the one seeking to enforce the agreement "has the burden of showing that the consideration was adequate and that the entire transaction was fair, just and equitable" from the other party's point of view or "that the agreement was freely and voluntarily entered into ... with competent, independent advice and full knowledge of

---

**4.** Specifically, the trial court states, "[Ms. Wiseman] seeks to repudiate the agreement on the basis that it was executed after the marriage."

[any] interest in the estate and its approximate value." (Citations omitted.)

. . . .

Marriage may, under appropriate circumstances, be sufficient consideration for a prenuptial agreement. (Citations omitted.) We note that in the present case, the appellant signed the agreement within two hours of her marriage. The close proximity in time between the marriage and the execution of the agreement would support a finding that the two promises were essentially concurrent, a requirement under the law of consideration. (Citations omitted.) Furthermore, Mr. Tibbs also relinquished any right to the wife's estate by this agreement. His relinquishment of a claim could also be considered adequate consideration for the appellant to sign the agreement.

*Id.* We agree with the reasoning expressed by the Alabama Supreme Court in *Tibbs.* Although, in the instant case, the marriage in and of itself would not be sufficient consideration, we find the couple's waiver of rights to each other's estate sufficient consideration to support the agreement. Consequently, we find the agreement before this Court to be "postnuptial," executed not in consideration of the marriage, but in consideration of the waiver of each party's statutory rights to the other's estate.

Ms. Wiseman further contends that she did not enter into the agreement knowledgeably and that the decedent did not enter into it in good faith. Specifically, she asserts that she was not made aware of Mr. Wiseman's business, Casters & Wheels or the fact that it was in financial difficulty prior to the marriage. She asserts that the failure to disclose the financial troubles of the company as well as Mr. Wiseman's failure to inform her of the legal consequences of the agreement constitutes bad faith. Once again, Appellees argue that these issues are raised for the first time on appeal. The trial court's memorandum opinion states, "[Ms. Wiseman] seeks to repudiate the agreement on the basis that it was executed after the marriage. [She] does not contend that there was fraud in the inducement or fraud in the procurement or that there was coercion or that her execution

was in any way involuntary or under duress. She does not allege material nondisclosure. There is no evidence of fraud, coercion or material nondisclosure." The record reveals Ms. Wiseman's testimony to include the following: "I found out after we were married that [Mr. Wiseman] had this Casters & Wheels. And I didn't know that he had that." She further states that the business "was losing money constantly." As it appears that testimony was heard regarding the nondisclosure of this property, without objection, we will consider the issue pursuant to Rule 15.02 T.R.C.P.

■ Ms. Wiseman testified that prior to the marriage, the couple exchanged financial statements. She informed Wiseman at this time that she was "financially okay" and did not need him to take care of her. She stated that she had $900,000 when she married and that the financial statement given her by Mr. Wiseman listed his assets at $300,000. Ms. Wiseman has been a teacher for 23 years. She testified that Mr. Wiseman was an attorney and that she had "absolute confidence" in him. She described the business of Casters & Wheels as involving "sales representatives who are out selling to companies." She states that she did not read the agreement prior to signing, but that the paragraph pertaining to it being the complete agreement of the parties, identifying the date of its execution and stating that it ratifies a prior oral agreement was not in the document when she signed it. She did not receive any independent legal advice regarding its content.

The record reveals Mr. Wiseman's total gross estate at his death to be $293,136.84. His total net estate was valued at $287,-421.11. Casters & Wheels, after dissolution and liquidation, was valued at $4,046.82. On cross-examination, Ms. Wiseman admitted that the agreement is "accurate" as to each item of real estate listed. She stated that Mr. Wiseman never said that he would not marry her if she did not sign the agreement.

The trial court aptly cites *Williamson v. Upchurch,* 768 S.W.2d 265 (Tenn.App.1988), for the proposition that "[a] contract, beneficial to the party seeking to invalidate it, should not be set aside in the absence of proof of fraud or duress." *Williamson,* 768

S.W.2d at 270. We find the record devoid of any evidence of fraud on Mr. Wiseman's behalf or anything to suggest that Ms. Wiseman executed the agreement under duress. Furthermore, we find the evidence to preponderate in favor of the trial court's finding that there is simply no evidence of material nondisclosure.

The judgment of the trial court is affirmed. Costs are taxed to Violet Wiseman, for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.