Paula Jane STEWART v. Paula Sue COMBS, Executrix of the Estate of James R. Stewart, Deceased

06-41                                        243 S.W.3d 294

Supreme Court of Arkansas
Opinion delivered November 16, 2006

*Mary Thomason*, for appellant.

*Shackleford, Phillips, Wineland & Ratcliff, P.A.*, by: *Teresa Maria Wineland*, for appellee.

BETTY C. DICKEY, Justice. This appeal involves the validity of a postnuptial agreement between Paula Jane Stewart, Appellant, and James R. Stewart, the deceased. The trial court found the agreement to be valid and enforceable against Mrs. Stewart, who then appealed to the Arkansas Court of Appeals. The case was certified to this court pursuant to Ark. Sup. Ct. R. 1-2(b)(4) & (b)(5), as one involving a significant issue of public interest needing clarification or development of the law and raising a question of first impression in the state of Arkansas. In certifying this case to this court, the court of appeals noted that a specific issue in the case was whether the decedent's attorney was required by law to inform Appellant that she should consult with her own attorney before entering into the agreement.

Paula and James Stewart were married on August 3, 1980. They each owned real and personal property prior to signing the agreement in question. Prior to the marriage, James Stewart owned approximately one hundred acres, with the marital home,

acquired from family members in 1972 and 1976. Subsequent to the marriage Appellant acquired about eighty acres in fee simple, and a one-half undivided interest in one hundred and forty-five acres subject to a life estate, both given to her by her father in October 1980. Her father released the life estate on the latter property when he became ill in 1997 and 1998.

During their marriage, the Stewarts discussed creating a document that would keep family lands as separate property. The attorney who prepared the agreement testified that it was his first postnuptial agreement, prompting him to be thorough in his research, preparation, and explanation of the document to the Stewarts. The attorney testified that he prepared the agreement after a meeting and discussion with Mr. Stewart. Shortly before March, 1982, he said he had both parties come into the office, and did "his very best to explain to the very best of [his] ability" the provisions that were contained in the instrument. He said he explained that he represented Mr. Stewart and, "never told [Mrs. Stewart] not to get an attorney." He also testified that there was no written provision in the agreement advising her of a right to an attorney.[1]

Appellant admitted signing a document on March 12, 1982, prepared by her husband's lawyer. She testified that she only scanned the document and assumed it was an agreement stating that if she *and* her husband died, or if they were divorced, that family lands would revert back to their families. Appellant contends that she did not understand that the agreement would give each of the parties his or her respective rights in the property that each owned prior to the marriage, and that the agreement would treat the marriage as if it had never happened. Appellant admitted that she knew the attorney who prepared the agreement to be her husband's attorney, and that her family had used a different attorney from Magnolia.

About two months after the postnuptial agreement was signed, the attorney attested the execution of the will signed by the decedent, but there was no reciprocal will signed by Appellant.

---

[1] Rule 1.7(b)(4) of the Arkansas Rules of Professional Conduct allows a lawyer to represent a client, notwithstanding the existence of a concurrent conflict of interest, if each affected client gives informed consent, confirmed in writing. This rule became effective May 1, 2005. *In Re Arkansas Bar Ass'n*, 361 Ark. App'x 451, 206 S.W.3d 889 (2005) (per curiam). The rules that were in effect at the time this postnuptial agreement was drafted did not require a written provision in the agreement.

Mrs. Stewart filed for divorce in 1983 and pled that there was no property to be adjudicated. There was a reconciliation, however, and the parties lived together as husband and wife until Mr. Stewart's death in 2004. The executors of Mr. Stewart's estate used the postnuptial agreement as a defense to Appellant's election to take against Mr. Stewart's will, and as a defense to Appellant's petition for an award of statutory allowances. The trial court found the postnuptial agreement between the Stewarts to be valid, and denied Appellant any interest in the estate of her husband. Appellant now argues that the postnuptial agreement was invalid and unenforceable to deprive her of any interest in the estate of her deceased husband, James Stewart.

Appellant contends that the postnuptial agreement should either be considered void, as such agreements were void at common law, or that the requirements of Ark. Code Ann. § 9-11-406 (Repl. 2002), Arkansas's prenuptial agreement statute, should be applied, including the requirement that Appellant consult with independent legal counsel. Appellant correctly notes that there is no statutory provision in this state for postnuptial agreements; however, they do not *per se* violate the law in Arkansas. *See Rush v. Smith*, 239 Ark. 706, 394 S.W.2d 613 (1965); *Sims v. Roberts*, 188 Ark. 1030, 68 S.W.2d 1001 (1934) (finding that the contract, having been reduced to writing and signed by the parties, was sufficient to make it valid between them whether it be treated as an antenuptial agreement reduced to writing, or a postnuptial agreement).

We next address the necessary prerequisites to the formation of a valid postnuptial agreement, and whether or not Ark. Code Ann. § 9-11-406 applies to a postnuptial agreement, as Appellant argues. The issue of the prerequisites of a postnuptial agreement is a question of law, and whether or not the prenuptial statute applies involves a statutory interpretation, both of which require de novo review. *See Dep't of Human Servs. v. Howard*, 367 Ark. 55, 238 S.W.3d 1 (2006); *Craven v. Fulton Sanitation Service, Inc.*, 361 Ark. 390, 206 S.W.3d 842 (2005). In statutory construction, we are not bound by the trial court's interpretation; however, its interpretation will be accepted as correct on appeal in the absence of error. *Rose v. Ark. State Plant Bd.*, 363 Ark. 281, 288, 213 S.W.3d 607, 614 (2005). The basic rule of statutory construction is to give effect to the intent of the legislature. *Howard, supra.* As long as the language of the statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used.

*Id.* We construe the meaning of a statute just as it reads, and give the words their plain and ordinary meaning. *Id.* We construe the statute so that no word is left void, superfluous or insignificant, and we give meaning to every word in the statute, if possible. *Id.*

■ The language of the Arkansas prenuptial agreement statute is plain and unambiguous. It provides, in relevant part:

> (a) A premarital agreement is not enforceable if the party against whom enforcement is sought proves that:
>
> (1) that party did not execute the agreement voluntarily; or
>
> (2) the agreement was unconscionable when it was executed *and*, before execution of the agreement, that party:
>
> (i) was not provided a fair and reasonable disclosure of the property or financial obligations of the other party;
>
> (ii) did not voluntarily and expressly waive after consulting with legal counsel, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; and
>
> (iii) did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the other party.

Ark. Code Ann. § 9-11-406(a) (emphasis added). By its terms, the statute only applies to agreements made prior to marriage. If the legislature had intended for this statute to also apply to postnuptial agreements, it presumably would have included the appropriate language. We have noted, "[i]t is not the business of the courts to legislate, and if a change in the law in this respect is desired, the General Assembly is the branch of government whence change must come." *Dick v. State*, 364 Ark. 133, 217 S.W.3d 778 (2005) (Imber, J., dissenting) (citing *S. Tel. Co. v. King*, 103 Ark. 160, 146 S.W. 489 (1912)).

While there is not a statute that specifically governs post-nuptial agreements, there are prerequisites for such agreements. Initially, they should be analyzed under contract law. *Bratton v. Bratton*, 136 S.W.3d 595 (Tenn. 2004). The essential elements of a

contract are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. *Williamson v. Sanofi Winthrop Pharms., Inc.*, 347 Ark. 89, 60 S.W.3d 428 (2001). The trial court found that the parties were competent, the purpose of the document was legal, there was consideration, and that both parties were mutually obligated and in agreement. However, Appellant alleges on appeal that she was unaware that she was giving up her rights to statutory allowances and the right to take against her husband's will. Furthermore, she argues that consideration was not equal.

In this type of case, this court will affirm the trial court's findings of fact unless they are clearly erroneous, or against the preponderance of the evidence. *Gray v. Gray*, 352 Ark. 443, 101 S.W.3d 816 (2003). A finding is clearly erroneous if the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Id.* In order to demonstrate an erroneous ruling, an appellant must show that the trial court abused its discretion by making a decision that was arbitrary or groundless. *Id.* This court will give due deference to the trial court's superior position to determine the credibility of witnesses and the weight to be given their testimony. *Id.* In addition, many courts analyzing the validity of a postnuptial agreement note that the agreement is subject to close scrutiny to ensure it is fair and equitable, as the confidential relationship between a husband and a wife keeps them from dealing at arm's length. *In re Estate of Gab*, 364 N.W.2d 924 (S.D. 1985); *Bratton v. Bratton*, 136 S.W.3d 595 (Tenn. 2004); *Peirce v. Peirce*, 994 P.2d 193 (Utah 2000).

Appellant complains that she was unaware that she gave up her right to dower, homestead, and statutory allowances. While the attorney who drafted the contract testified that he never had either party sign a deed conveying dower or curtesy interest, he explained the contract thoroughly to both parties, going over the effect of each provision. The trial judge found the attorney's testimony credible and persuasive, describing him as a distinguished and highly respected attorney. The Supreme Court of Pennsylvania has concluded that the spousal relationship does not warrant the extra requirement that the parties be advised of their statutory rights. *Stoner v. Stoner*, 819 A.2d 529 (Pa. 2003). That court found that a balance is created by requiring full disclosure of financial assets, in conjunction with the protection of traditional contract remedies for fraud, misrepresentation, or duress. *Id.; see also Casto v. Casto*, 508 So. 2d 330 (Fla. 1987) (finding that

invalidation of a separation agreement was properly based upon the conduct of the husband, including the fact that his wife had no independent knowledge of the extent of her husband's assets or income). However, some courts say that the marital relationship prevents a husband and wife from dealing at arm's length. The Supreme Court of Idaho has stated that some marital agreements, even without actual fraud or duress, should not be enforced where there is overreaching on the part of a husband, especially where the wife was ignorant of her rights, and acted without independent counsel. *Sande v. Sande*, 360 P.2d 998 (Idaho 1961). In the instant case, the waiver and release of dower, curtesy, homestead, and statutory allowance was mutual. A plain reading of the agreement is clear as to the rights that each party was relinquishing. If Appellant had died first, Mr. Stewart would not have had claims against her estate. Finally, there is no evidence, nor does Appellant allege, that her husband failed to make a full disclosure of his assets. We consider this to be a fair and equitable agreement.

Appellant does not argue that the agreement completely lacked consideration, only that Mr. Stewart was not also giving up the right to continue living in the family home if Appellant died first. Therefore, Appellant contends that the consideration is not equal. However, contract law has established that consideration does not have to be equal.

> Consideration is not insufficient merely because it is inadequate. The legal sufficiency of consideration for a promise does not depend upon the comparative economic value of the consideration and of what is promised in return. The doctrine of consideration does not require or imply an equal exchange between the contracting parties. The relative values of a promise and the consideration for it do not affect the sufficiency of the consideration, and whatever consideration a promisor assents to as the price of a promise is legally sufficient.
>
> In addition, the Tennessee Supreme Court illustrated, in a footnote, that "there are many cases upholding post-nuptial agreements in which the parties mutually release claims to each other's property in the event of death." *Bratton, supra*, at 604 n.2 (citing *Tibbs v. Anderson*, 580 So.2d 1337 (Ala. 1991); *In re Estate of Wiseman*, 889 S.W.2d 215 (Tenn. Ct. App. 1994)).

17A Am. Jur. 2d *Contracts* § 125 (1995). In addition, the Tennessee Supreme Court illustrated, in a footnote, that "there are many cases

upholding post-nuptial agreements in which the parties mutually release claims to each other's property in the event of death." *Estate of Wiseman*, 889 S.W.2d 215 (Tenn. Ct. App. 1994); *Tibbs v. Anderson*, 580 So. 2d 1337 (Ala. 1991); *Bratton, supra*, at 604 n.2. This court has held that mutual promises may constitute consideration as long as each promise places a real liability on the other party, and that a mutual promise made by each party is the classic method of satisfying the doctrine of mutuality. *See Showmethemoney Check Cashers, Inc. v. Williams*, 342 Ark. 112, 27 S.W.3d 361 (2000); *see also Asbury Auto. Used Car Ctr., L.L.C. v. Brosh*, 364 Ark. 386, 220 S.W.3d 637 (2005).

■ In the instant case, the agreement recites that the consideration is provided by the mutual covenants contained therein. Both Appellant and her husband waived and released all right, title, and interest to any property owned by the other, whether acquired prior or subsequent to the marriage. In addition, each party waived and released any rights as surviving spouse to elect to take against the other's will, to have any interest or right as surviving spouse to the property of the deceased spouse, and to inherit under the laws of descent and distribution. Therefore, we find that the mutual release by each party is adequate consideration to support the postnuptial agreement. We do not find that the trial court was clearly erroneous in concluding that this particular agreement was fair, equitable, and supported by consideration.

Affirmed.

HANNAH, C.J., concurs in part and dissents in part.

JIM HANNAH, Chief Justice, concurring in part; dissenting in part. I concur in part and dissent in part. I agree that Ark. Code Ann. § 9-11-206 (Repl. 2002) concerns only prenuptial agreements and is not relevant to this case. I also agree that principles of contract law should be applied in determining the validity of a postnuptial agreement. Further, I agree that there is no evidence of fraud or misconduct in formation of the agreement. Finally, I also concur in the holding that the agreement was supported by consideration. However, I dissent from the remainder of the majority opinion.