Vincent Ottice SIMMONS *v.* Dorothy Clemons SIMMONS

CA 06-303                                      249 S.W.3d 843

Court of Appeals of Arkansas
Opinion delivered February 14, 2007

*Gibson & Hashem, PLC*, by: *Paul W. Keith*, for appellant.

*Johnson Law Office, LLC*, by: *B. Kenneth Johnson*, for appellee.

SAM BIRD, Judge. This appeal arises out of the trial court's division of property in a divorce case. Vincent Simmons appeals from the trial court's order awarding to his wife, Dorothy Simmons, a one-half interest in land that he inherited from his parents. Vincent contends that the land is non-marital property and, consequently, should have remained his separate property. We agree, and we reverse and remand.

Vincent and Dorothy Simmons were married on October 9, 1976. On April 11, 1995, Vincent's mother, Louise Simmons, executed The Louise B. Simmons Trust in order to convey certain land in Florida to her children, Vincent and his sister, upon her death. Louise Simmons died on April 1, 1999, but the land remained in trust for several years after her death. After Louise died, Dorothy became concerned that she would not receive an interest in the Florida land if Vincent died before the trust was distributed, so she hired an attorney in Monticello, David Chambers, to prepare a document to protect her interest. After speaking with Dorothy, Mr. Chambers drafted an affidavit to be executed by Vincent, which stated in pertinent part as follows:

> 1. My name is Vincent Simmons, of Monticello, Drew County, Arkansas, and I am over the age of eighteen years.

> 2. I am a beneficiary, along with my sister, Ella Kay Simmons (Tabb), of the Louise B. Simmons Trust. Louise B. Simmons is my mother and she has been deceased for a few years. At least part of the corpus of said Trust is certain real property located in the State of Florida, more particularly described as the northwest corner of Highway 39 and Trapnell Road, south of Plant City, Hillsborough County, Florida, consisting of approximately 28 acres.

3. I have been married to my wife, Dorothy Simmons, for 25 years. It is my intention, through this affidavit, to convey to my said wife marital interest in said real property. If I should die prior to the above-stated Trust being dissolved, then my said wife shall receive my share of said real property as her own property. Otherwise, if said Trust is dissolved prior to my death, then my wife shall be entitled to her legal marital interest in said real property.

On June 11, 2002, Dorothy and Vincent went to Mr. Chambers's office in order for Vincent to sign the affidavit, which he did. The trust property was distributed to Vincent and his sister on November 1, 2002. On February 11, 2003, Dorothy filed a complaint for divorce. The parties reached agreement regarding the division of all property except for the Florida land. The trial court held a hearing regarding the character of this land as marital or non-marital on October 31, 2005.

On December 7, 2005, the trial court sent a letter to the parties' attorneys, stating that the letter was submitted as the court's findings on the issue of ownership of the land in Florida. While the trial court recognized that a person in a divorce action is not entitled to any interest in property inherited by his or her spouse, the court noted that this law can be negated by the inheriting spouse — that is, the inheriting spouse can convey the property to the non-inheriting spouse. The trial court found that, by signing the affidavit, Vincent conveyed one-half of his interest in the Florida land to Dorothy. The trial court determined that "[t]his was done in consideration of twenty-five years of marriage, and is found to be binding." The court entered an order incorporating its findings on January 9, 2006.

On appeal, Vincent argues that the trial court erred in finding that his affidavit constituted a contract to convey an interest in the Florida land to Dorothy. He argues, first, that there is a total absence of consideration to support a contract in this case. Second, he claims that the affidavit lacks the mutuality of obligation necessary to support a contract. He also contends that, because one cannot determine from the affidavit what is meant by the terms "marital interest" and "legal marital interest," a person is left to speculate whether the terms refer to dower, homestead, personal allowances, or something else.

Dorothy responds, arguing that her ongoing marriage to Vincent constituted adequate consideration to support the contract. She also contends that Vincent's obligation to convey land

and her obligation to be Vincent's wife constituted mutual obligations. Dorothy does not argue that the Florida land was marital property prior to Vincent's purported transfer to her by affidavit.

Although we review domestic-relations cases de novo on the record, we will not reverse a finding of fact by the trial court unless it is clearly erroneous. *Scott v. Scott*, 86 Ark. App. 120, 125, 161 S.W.3d 307, 310 (2004); *see also Stewart v. Combs*, 368 Ark. 121, 243 S.W.3d 294 (2006) (court reviewed validity of postnuptial agreement under clearly erroneous standard). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Id.*

. The trial court treated Vincent's affidavit as a contract, or postnuptial agreement. A postnuptial agreement is an agreement entered into during marriage to define each spouse's property rights in the event of death or divorce. The term commonly refers to an agreement made at a time when separation or divorce is not imminent. *Black's Law Dictionary* 1206 (8th ed. 1999). The Arkansas Supreme Court recently addressed the validity of postnuptial agreements and held that they should be analyzed under the basic principles of contract law. *Stewart*, 368 Ark. at 126, 243 S.W.3d at 298. The court also noted that postnuptial agreements are subject to close scrutiny to ensure that they are fair and equitable, as "the confidential relationship between a husband and a wife keeps them from dealing at arm's length." *Id.* (citing *Bratton v. Bratton*, 136 S.W.3d 595 (Tenn. 2004); *Peirce v. Peirce*, 994 P.2d 193 (Utah 2000); *In re Estate of Gab*, 364 N.W.2d 924 (S.D. 1985)).

We turn to the law governing contracts in Arkansas to determine the contractual validity of Vincent's affidavit. The essential elements of a contract are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. *Id.* As neither of the parties appears to contest that this "contract" included competent parties, subject matter, and mutual agreement, we will not address those elements here. The parties do disagree about whether Vincent's expressed intention to convey an interest in the Florida land to Dorothy was supported by legal consideration and whether the affidavit contained mutual obligations.

Dorothy argues — and the trial court agreed with her argument — that the agreement was made in consideration of Dorothy's twenty-five years of marriage to Vincent. Vincent claims that a marriage is past consideration and therefore does not

constitute legal consideration. While the issue of whether the marriage itself is adequate consideration to support a postnuptial agreement has not been specifically addressed in Arkansas, it has long been the law in Arkansas that past consideration will not support a current promise and is not adequate legal consideration. *See, e.g., Wilson Bros. Lumber Co. v. Furqueron*, 204 Ark. 1064, 166 S.W.2d 1026 (1942); *Ford v. Ward*, 26 Ark. 360 (1870); *Rohrscheib v. Helena Hosp. Ass'n*, 12 Ark. App. 6, 670 S.W.2d 812 (1984). Other jurisdictions that have addressed this issue have held that an existing marriage is past consideration and will not support a postnuptial agreement. In *Bratton*, relied upon by the Arkansas Supreme Court in *Stewart*, the Tennessee Supreme Court stated that "the marriage itself cannot act as sufficient consideration because past consideration cannot support a current promise." *Bratton*, 136 S.W.3d at 600; *accord Whitmore v. Whitmore*, 778 N.Y.S.2d 73 (N.Y. App. Div. 2004); *Marty v. Marty*, 206 P. 324 (Kan. 1922); and *Clow v. Brown*, 72 N.E. 534 (Ind. App. 1904). Following the guidance of the Tennessee Supreme Court in *Bratton* and our own case law holding that past consideration will not support a current promise, we hold that the parties' marriage is not adequate legal consideration to support this agreement.

Finally, the element of mutual obligations does not exist in this agreement. "[M]utuality of contract means that an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; thus, neither party is bound unless both are bound." *Tyson Foods, Inc. v. Archer*, 356 Ark. 136, 142, 147 S.W.3d 681, 684 (2004). In finding that the mutual release by each party of his or her interest in property owned by the other constituted mutual obligations to support a postnuptial agreement in *Stewart v. Combs*, the supreme court said that "mutual promises may constitute consideration as long as each promise places a *real liability* on the other party." *Stewart*, 368 Ark. at 127-28, 243 S.W.3d at 299 (emphasis added). In the case before us, there is no obligation or real liability upon Dorothy to do anything in consideration of Vincent's promise to convey an interest in the Florida land to her.

Because we hold that the affidavit is not supported by adequate legal consideration or mutual obligations, we do not address Vincent's argument that the terms "marital interest" and "legal marital interest" are not sufficiently defined in the affidavit to form a binding contract. We reverse the trial court's order

finding that the Florida land is marital property and awarding a one-half interest in the land to Dorothy. We remand to the trial court to enter an order consistent with this opinion.

Reversed and remanded.

GLADWIN and BAKER, JJ., agree.