Paula Sue COMBS,
as Executrix of the Estate of James R. Stewart v.
Paula Jane STEWART

08-276 288 S.W.3d 574

Supreme Court of Arkansas
Opinion delivered October 9, 2008

*Shackleford, Phillips & Ratcliff, P.A.*, by: *Brian H. Ratcliff* and *Carl F. "Trey" Cooper, III*, for appellant.

*Mary Thomason*, for appellee.

PAUL E. DANIELSON, Justice. This appeal stems from the closing of the estate of James Stewart and returns to this court on another probate matter after our decision in *Stewart v. Combs*, 368 Ark. 121, 243 S.W.3d 294 (2006). Appellant Paula Sue Combs, as executrix of the estate of James Stewart, asserts that the circuit court erred by: (1) finding that the estate is responsible for the remaining debt owed to Farm Credit Services; and (2) awarding certain monies to appellee Paula Jane Stewart. We find no error and affirm.

The record reveals the following facts. Paula Jane and James Stewart were married on August 3, 1980. In the course of their marriage, they farmed their land, grew hay and timber, and raised cattle and chickens. Farming was the sole occupation for James Stewart, and Paula Stewart supplemented their income with her

teacher's salary. Paula Stewart also worked on the farm during non-school times. The couple established joint bank accounts and also entered jointly into financing agreements with both Farm Credit Services and Pilgrim's Pride for the operation of the farm. In addition, they each owned real and personal property, mostly acquired from their respective families. In 1982, the couple signed a postnuptial agreement in which they both agreed to waive and release all rights to dower, curtesy, homestead, and statutory allowance. Paula Stewart filed for divorce in 1983 and pled that there was no property to be adjudicated. However, there was a reconciliation, and Paula and James Stewart lived together as husband and wife until James Stewart's death in 2004.

After James Stewart's death, Paula Stewart elected to take against James Stewart's will and petitioned for an award of statutory allowances. However, Paula Sue Combs used the postnuptial agreement to prove that Paula Stewart did not have any interest in the estate. This court upheld the circuit court's finding that the postnuptial agreement between the Stewarts was valid. *See Stewart, supra.*

The case then returned to the circuit court for the final division of property, debt, and monies. The estate now returns to this court as the appellant, challenging certain findings by the circuit court.

The estate first argues that the circuit court's decision that the estate be responsible for the remaining debt owed to Farm Credit Services (FCS) was erroneous because it destroyed a joint debt and because certain property used as collateral on the debt was awarded to Paula Stewart. It contends that the finding was equitable in nature and that a circuit court may not make an equitable finding in a probate case. Paula Stewart avers that the circuit court's decision should be upheld because the primary assets acquired by virtue of the loan from FCS are now owned by the estate and benefit the estate.

The probate court is a court of special and limited jurisdiction, having only such jurisdiction and powers as are conferred by the constitution or by statute, or are necessarily incident to the exercise of the jurisdiction and powers granted. *See Kidwell v. Rhew,* 371 Ark. 490, 268 S.W.3d 309 (2007).

We have repeatedly stated our standard of review in probate proceedings. This court reviews probate proceedings de novo on the record, but it will not reverse the decision of the circuit court

unless it is clearly erroneous. *See Bullock v. Barnes*, 366 Ark. 444, 236 S.W.3d 498 (2006). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *See Devine v. Martens*, 371 Ark. 60, 263 S.W.3d 515 (2007). In conducting our review, we give due regard to the opportunity and superior position of the trial judge to determine the credibility of the witnesses. *See Bullock, supra.*

In September 2003, Paula and James Stewart jointly obtained a loan with FCS for $146,630 for the stated purpose of poultry house improvements, equipment, and the consolidation of farm debt. Pursuant to the Stewarts' postnuptial agreement, the farm became the sole property of the estate after James Stewart's death. Therefore, the circuit court determined that the estate was responsible for the remaining money owed to FCS, as the farm benefitted from that loan. On appeal, the estate acknowledges that "[in] essence what was done is that since the estate owns the real property where the chicken houses are located the debt should follow the owner of the asset." However, the estate asserts that the circuit court's finding is an equitable remedy and that the circuit court may not make an equitable ruling in a probate case.

This court has stated that the law regarding marital property does not apply in situations other than divorce and that "[w]hile the distributive share under probate law may not vary, the same cannot be said of the law of divorce, as the statute specifically empowers the chancellor to alter the distribution of marital property as the equities dictate." *Cloud v. Brandt*, 370 Ark. 323, 330-31, 259 S.W.3d 439, 444 (2007) (quoting *Ellis v. Ellis*, 315 Ark. 475, 477, 868 S.W.2d 83, 84 (1994)). However, in the instant case, the real property involved was distributed pursuant to the postnuptial agreement upheld by this court in *Stewart v. Combs*, 368 Ark. 121, 243 S.W.3d 294 (2006). In concluding the probate of Mr. Stewart's estate, the circuit court was charged not only with finishing the division of certain personal property, but incident to that task, dealing with the issue of debt.

Nothing in our probate code prohibits a circuit court from determining what party is best suited to pay a debt after a division of property has been determined. The probate code provides the following instruction regarding property that has not been paid for:

> (a) If a decedent has purchased any real or personal property and has neither completed the payments therefor, nor devised the

property, nor provided by will for payment therefor, and the completion of the payments would be beneficial to the estate and not injurious to creditors, the personal representative, upon order of the court, may complete the payments out of assets in his or her hands, and the property shall be disposed of as other property of the estate.

(b) If the court finds that completion of the payments would not be beneficial to the estate or would be injurious to the creditors, the court may order the personal representative to sell all of the right, title, interest, and claim of the decedent in and to the property.

Ark. Code Ann. § 28-49-107 (Repl. 2004).

 Although the code does not specifically address property secured by a joint debt between the decedent and another party, the probate court is clearly instructed to make findings as to what an estate should do regarding debt. In doing so, the court is to consider what will benefit the estate as well as third parties such as creditors. *See id.* In the instant case, the estate owed a debt that it shared with Paula Stewart. Therefore, it was necessary for the court to weigh the benefits to all parties involved and make a finding on that issue.

After considering all the evidence, the circuit court found the following:

As to the issue of debt, the decedent and [Paula] Jane Stewart were originally indebted to Farm Credit Services (FCS) for the construction of chicken houses. The basis of the debt is a loan of $146,630 made to the parties by FCS on October 30, 2003 (Plaintiff's Exhibit 15). Repayment was to be made by five annual installments. The estate made the 2006 annual payment of $23,337.04 and the approximate balance of that account is now $65,000. The addition of the chicken houses enhances the value of the farm which inures to the benefit of the estate. Accordingly, the estate shall be responsible for the payment of the debt resulting from that construction.

It is undisputed that the estate is now in sole ownership of the farm and the chicken houses, while the farm equipment was awarded to Paula Stewart. Although evidence was presented that a portion of the loan was used to purchase the farm equipment, the circuit court found that the original debt was mainly used for the construction of the chicken houses and, therefore, the estate will receive the major

benefit of the loan and must pay the remaining part of the debt. We cannot say the circuit court was clearly erroneous in making such a finding.

 The estate next argues that it should have been awarded certain monies over Paula Stewart. First, the estate claims that a check from Pilgrim's Pride issued to James Stewart for the sale of chickens was estate property and that it should be able to recover those funds from Paula Stewart because she failed to file a claim for that money with the estate. Second, the estate argues that the funds received by Paula Stewart for the sale of cattle after James Stewart's death should not have been awarded to her because she failed to file a claim with the estate for those funds. However, neither of these claims have merit because, upon the death of James Stewart, Paula Stewart became the sole owner of the majority of the personal property that existed on the farm at the time of James Stewart's death, including the chickens and the cattle.

On appeal, the estate does not dispute the ownership of the chickens or the cattle. The circuit court found that the check, although issued to James Stewart, was received in the normal course of the business of selling chickens, and its proceeds were used to pay the debts associated with that business. Because the estate did not have a claim to the chickens or the cattle, it did not have a right to the money received in exchange for that property. The circuit court was not clearly erroneous and, therefore, we affirm on this point as well.

Affirmed.