SPRINGDALE WINNELSON COMPANY *v.* Alan RAKES
and Al's Plumbing, Inc.

98-1275                                                987 S.W.2d 690

Supreme Court of Arkansas
Opinion delivered March 25, 1999

*Harrington, Miller, Neihouse & Krug, P.A.*, by: *Wayne Krug*, for appellant.

.*Stephen Lee Wood, P.A.*, by: *Stephen Lee Wood*, for appellees.

RAY THORNTON, Justice. Appellant, Springdale Winnelson Company, a supply company, sought reimbursement from appellees, Alan Rakes and his company, Al's Plumbing, Inc., for gross-receipts taxes paid on the sale of tangible personal property. The Benton County Circuit Court granted appellees's Motion to Dismiss on the grounds that no statutory authority existed to allow Winnelson to pursue an action against Rakes for the reimbursement of uncollected sales taxes. Winnelson brings this appeal, alleging that the trial court erred in dismissing their claim, arguing that Arkansas law places the ultimate burden of gross-receipts taxes on the consumer and that the trial court erred in ruling that Winnelson must prove a good-faith effort to verify their assumption of Rakes's tax-exempt status before recovery could be had. We affirm the trial court's dismissal of the claim for recovery.

On September 12, 1989, Rakes completed a credit application for doing business with Springdale Winnelson Company. The application indicated by check marks that Rakes was exempt from state and local sales taxes. The application was approved, and over the coming years Winnelson sold to Rakes a substantial amount of personal property which, without a tax exemption, would qualify as taxable under the Arkansas Gross Receipts Act of 1941, codified at Ark. Code Ann. §§ 26-52-101—26-52-1507 (Repl. 1997). Winnelson filed suit on August 3, 1996, in the Benton County Circuit Court against Rakes seeking reimbursement for the tax obligation following an audit by the Department of Finance and Administration that revealed that Winnelson had made unreported taxable sales to Rakes of $882,409.36 and was

responsible for unpaid taxes in the amount of $109,638.55. This audit was completed December 13, 1995, and the State's Final Assessment and Demand for Payment was issued to Winnelson on March 21, 1996.

At a bench trial on the complaint, the parties agreed that the critical issue was whether Rakes held his company out to be tax-exempt, and whether Winnelson relied in good faith upon that claim of exemption. Alan Rakes testified that he had contact with Winnelson in January of 1990 regarding their failure to collect taxes in 1989, and he was told that the company would bill him for the unpaid taxes. It was the practice of the parties for Winnelson to bill Rakes at the end of each month for the purchases he made in connection with his construction work. These statements did not include state or local taxes on the purchases made. Winnelson did not make a demand for payment until after the 1995 audit, which was after Rakes had moved his business to another supplier.

Mr. Rakes denied claiming his business was exempt from sales taxes, either on the credit application or in any other representation. In October of 1990, Rakes received a letter from Winnelson asking that he complete and return by October 15, 1990, a form to verify his tax-exempt status. The letter, which was sent to all of Winnelson's customers, notified them that if they failed to do so, sales taxes would be charged on their accounts. Rakes did not complete or return the form. John Dailey, former president of Winnelson, testified that the company failed to charge Rakes taxes after the October 15, 1990, deadline because Al's Plumbing was "a good account and we wasn't trying to stir up any problems with him."

At the conclusion of Winnelson's case, Rakes moved for dismissal on the grounds that there was no statutory basis for the claim and that Winnelson had failed to establish their good-faith reliance on Rakes's tax-exempt status, as required by Ark. Code Ann. § 26-52-519 (Repl. 1997). The trial court granted Rakes's motion, ruling that a vendor must make a good-faith effort to determine that its customer is, in fact, exempt from sales tax on purchases, and if the vendor fails to make such a good-faith effort,

then the vendor is liable for the taxes. The trial court further found that Winnelson had, or should have had, notice as of October 15, 1990, that Al's Plumbing, Inc. (Rakes), was not exempt from sales tax, and failed to make a good-faith effort to determine the validity of the tax-exempt status extended to Rakes.

Winnelson's two points on appeal relate to the burden of payment of gross-receipts taxes and whether a seller who is not relying in good faith on the tax-exempt status of his customer becomes liable for the taxes when the purchaser is not tax-exempt. Winnelson argues that the ultimate burden of the Arkansas Gross Receipts Act is upon Rakes as the purchaser, and that it is entitled to recover from Rakes taxes unpaid at the point of sale regardless of the existence of a good-faith reliance upon the purchaser's alleged claim of tax-exempt status.

The statute in effect at the time the present litigation was commenced provides in pertinent part:

> The sales tax liability for all sales of tangible personal property is upon the seller unless, at or before, the time of sale, the seller takes in good faith a certificate of resale from the holder of a valid retailer's permit who is regularly engaged in the established business of reselling property of the type being purchased.

Ark. Code Ann. § 26-52-517 (Repl. 1997).

We further note with interest the provisions of the emergency clause, which made this 1995 act effective from and after July 1, 1995. That emergency clause provided in pertinent part that:

> [T]he purchaser in most cases will be in the best position to determine whether the resale exemption is valid but current law does not permit recourse against the purchaser if the property purchased is not in fact resold; and that the practicalities of business require that vendors be permitted to relieve themselves of tax liability upon good faith acceptance of a resale certificate and this act is designed to afford such relief.

Act 358 of 1995.

The most recent enactment on this subject, Act 391 of 1997, amends Ark. Code Ann. § 26-52-519 to read:

(a) The sales tax liability for all sales of tangible personal property or taxable services is upon the seller unless, at or before the time of sale, the seller relies in good faith on a claim by the purchaser or documentation provided by the purchaser that the purchaser is entitled to a sales tax exemption.

(b) If the seller has actual knowledge of information or circumstances indicating that it is unlikely that the purchaser is entitled to a sales tax exemption and exempts the purchase, the seller has not acted in good faith.

(c) If the seller has acted in good faith, the liability for the tax is transferred to the purchaser who shall be liable for tax, penalty and interest due on the purchase.

\* \* \* \* \*

SECTION 5. Emergency. It is hereby found and determined by the General Assembly that sellers have relied to their detriment in accepting sales tax exemption claims by purchasers in good faith, only later to incur tax liability if the purchaser was not entitled to an exemption; that the purchaser is in the best position to determine whether the exemption claim is valid *but current law does not permit recourse against the purchaser if the sale is not tax exempt*; that sellers be allowed to relieve themselves of tax liability upon good faith acceptance of a claim that a sale is tax exempt . . .

Act 391 of 1997 (emphasis added).

■ ■ The first rule in interpreting a statute is to construe it just as it reads by giving words their ordinary and usually accepted meaning. *Board of Trustees v. Stodola*, 328 Ark. 194, 199, 942 S.W.2d 255, 257 (1997). Our reading of the progression of the statutes on this subject indicates that the law has clearly developed that the burden of payment for uncollected sales taxes rests upon the seller. This is so because it would be impracticable and unreasonable to expect the consumer, the buying public, to know when a sales tax is owed and, if so, to whom it should be paid, and so, therefore, the burden of collecting gross sales-tax receipts has been placed on the seller. *Cheney v. Fredrick*, 239 Ark. 466, 468, 390 S.W.2d 121, 122 (1965)(*citing Arkansas Power & Light Co. v. Roth*, 193 Ark. 1015, 104 S.W.2d 207 (1937)). This is borne out by the Department of Finance and Administration's own rules, which provide:

The Department of Finance and Administration, Revenue Division, does not issue exemption certificates. Consumers who represent to sellers that their purchases or property or services are exempt from the tax must conclusively prove their entitlement to the exemption to the seller. Even though the seller accepts the consumer's representations that the transaction is exempt from tax, seller shall be liable for the tax if the transaction does not, in fact, qualify for an exemption. Sellers are, therefore, encouraged to obtain indemnification agreements from their customers claiming exemption.

Rule GR-74 of the Department of Finance and Administration.

Appellant contends that our decision in *Arkansas Power & Light Co. v. Roth* makes it clear that the purchaser bears the ultimate burden for paying the taxes. *Arkansas Power & Light Co. v. Roth*, 193 Ark. 1015, 104 S.W.2d 207 (1937). We note, however, that in *Roth*, the seller was permitted to recover from the purchaser because the seller had taken a mortgage from the purchaser to secure the payment for the electricity *and the taxes*. "The tax was a part of the sale price and is, therefore, a part of the debt secured by the mortgage . . ." *Roth*, 193 Ark. at 1019, 104 S.W. 2d at 209. Notwithstanding this contractual obligation to pay the taxes, we noted that under the Sales Tax Act then in place, Act 233 of 1935, "the retailer who fails, refuses, or neglects to collect the tax must pay it himself." *Roth*, 193 Ark. at 1016, 104 S.W.2d at 208. In *Roth* we further stated that this imposition of liability upon the seller was accompanied by a responsibility to collect from the purchaser. "He must add the tax to the sales price, and the sum total becomes the price which the purchaser must pay." *Id.*

The 1935 statute that we interpreted in *Roth* to allow the seller to enforce a contractual obligation to pay the taxes has since been amended, but the later enactments continue to place the obligation to collect sales tax upon the vendor, except when the vendor in good faith relies upon a purchaser's assertion of tax-exempt status. Here, the facts of the case demonstrate that Winnelson, for whatever reason, failed or neglected to bill for or collect the applicable taxes from Rakes at the time of the sales. Thus,

Winnelson is liable for the unpaid taxes in the absence of good-faith reliance upon Rakes's having a tax-exempt status.

■ The trial court ruled that Winnelson had failed to make a good-faith effort to determine whether Rakes's business was in fact exempt from taxes, based upon its factual findings that Winnelson had or should have had notice as of October 15, 1990, that Al's Plumbing (Rakes) was not exempt from sales taxes on its purchases from Winnelson. When a case is tried by a circuit court sitting without a jury, our inquiry on appeal is not whether there is substantial evidence to support the factual findings of the court, but whether the findings are clearly erroneous, or clearly against the preponderance of the evidence. *Jernigan v. Cash*, 298 Ark. 347, 349, 767 S.W.2d 517, 519 (1989).

■ Based upon the evidence presented at the trial, we cannot say that the trial court's finding that Winnelson had or should have had notice that Al's Plumbing (Rakes) was not tax-exempt as of October 15, 1990, was clearly erroneous. Winnelson sent letters to each of its customers requesting that a form verifying their tax-exempt status be returned to them by October 15, 1990. The letter further notified the customers that if the form was not completed, their accounts would be charged sales tax. Rakes did not complete or return this form, yet Winnelson failed to start charging Rakes sales tax. In fact, Winnelson's former president testified that Rakes was not charged sales tax after that point because he was a good customer and Winnelson did not want to create problems with him. On the basis of this testimony, it is clear that the trial court's finding that Winnelson did not rely in good faith upon Rakes's tax-exempt status is not clearly against the preponderance of the evidence.

We conclude that the trial court correctly found that the liability for payment of the taxes was upon the seller unless the seller relied in good faith upon a representation by the purchaser of a tax-exempt status. We further conclude that the trial court's determination that Winnelson did not rely in good faith upon Rakes's tax-exempt status was not clearly erroneous.

Affirmed.

GLAZE and IMBER, JJ. concur.

A NNABELLE CLINTON IMBER, Justice, concurring. I join the majority in affirming the trial court's dismissal of Springdale Winnelson Company's claim against Alan Rakes and Al's Plumbing, Inc., for reimbursement of gross-receipts taxes paid on the sale of tangible personal property. However, I believe our holding in this case deserves a brief caveat. In this appeal we were not asked to address, nor do we address, whether there is a statutory basis for a vendor to seek reimbursement of uncollected sales taxes from a purchaser. That issue remains for another day.

GLAZE, J., joins in this concurrence.