104 Ark.App. 262

**PINE MEADOW AUTOFLEX, LLC, Appellant,**

v.

**Susan TAYLOR, Appellee.**

**No. CA 08–299.**

Court of Appeals of Arkansas.

Jan. 21, 2009.

---

Richard P. Osborne, Fayetteville, for appellant.

Williams & Hutchinson, LLP, by: Timothy C. Hutchinson, Rogers, for appellee.

JOHN MAUZY PITTMAN, Judge.

This case involves a dispute between appellant lienholder and a subsequent purchaser over possession of an automobile. The trial judge found that appellee was a good-faith purchaser for value and thus was entitled to possession of the automobile under Arkansas Code Annotated section 4–2–403 (Repl.2001). Appellant argues on appeal that the trial court erred in finding that appellee was a good-faith purchaser for value and that, even if the latter finding were correct, appellee purchaser would not be entitled to the vehicle because her seller had only void title. We affirm.

Appellant lienholder sold the automobile, a previously-damaged and salvaged 1997 Jeep, to David Cates for $7,995 in June 2005. Appellant financed the purchase and took a lien interest that was noted on

the face of the title. Cates subsequently became delinquent on the payments and filed for bankruptcy, whereby the automatic stay prevented appellant from enforcing the lien. On August 25, 2006, Cates applied for a duplicate title for the Jeep. The application was accompanied by a form entitled "State of Arkansas Official Release of Lien or Permission to Issue a Replacement Title," stating that the lien held by appellant had been satisfied and released. The release purported to be authorized by "Jeff Barron" on behalf of appellant lienholder. This document was a forgery in that there was no person named Jeff Barron who was authorized to release the lien on behalf of appellant, Pine Meadow Autoflex LLC. Nevertheless, based on this forgery, the State of Arkansas issued a duplicate title showing David Cates as sole owner of the vehicle with no outstanding lien.

Cates then sold the automobile to Walt Asher, who transferred title to Recovery Files, which operated a used-car lot. Appellee previously had purchased vehicles from Recovery Files without incident. After being informed that the vehicle in question was salvaged, and discovering that the transmission was inoperable, the door did not have a latch, and the rear hatch would not shut, appellee purchased the vehicle from Recovery Files for $1,850 and obtained a clear title in her name. Approximately two months later, after appellee had made extensive repairs, licensed the vehicle, and obtained insurance, the vehicle was repossessed from appellee's home on behalf of appellant. Appellee then brought this action to recover the vehicle.

■ We first address appellant's argument that the trial court erred in finding appellee to be a good-faith purchaser for value. "Good faith" means honesty in fact and the observance of reasonable commercial standards of fair dealing. Ark.Code

Ann. § 4–1–201(b)(20) (Supp.2007). Whether a party has acted in good faith in a commercial transaction is generally a question of fact. *Midway Auto Sales v. Clarkson,* 71 Ark.App. 316, 29 S.W.3d 788 (2000). When a case is tried by a circuit court sitting without a jury, our inquiry on appeal is not whether there is substantial evidence to support the factual findings of the court, but whether the findings are clearly erroneous, or clearly against the preponderance of the evidence. *Springdale Winnelson Co. v. Rakes,* 337 Ark. 154, 987 S.W.2d 690 (1999). Here, the record shows that appellee purchased the vehicle from an established dealer with which she had previously dealt. Although there was evidence that appellee purchased the vehicle for less than the blue-book value, there was also evidence that it required extensive repairs. Furthermore, when appellee attempted to obtain a loan to finance her purchase of the vehicle, the lender refused to lend the purchase price with only the vehicle as security, and required additional collateral. Finally, appellee invested in repairs, licensed the vehicle, and obtained insurance. On this record, we cannot say that the trial court clearly erred in finding that appellee was a good-faith purchaser for value.

■ Nor do we agree with appellant's assertion that appellee acquired only void title. The governing statute, section 4–2–403 (Repl.2001), provides that:

(1) A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though

(a) the transferor was deceived as to the identity of the purchaser; or

(b) the delivery was in exchange for a check which is later dishonored; or

(c) it was agreed that the transaction was to be a "cash sale"; or

(d) the delivery was procured through fraud punishable as larcenous under the criminal law.

(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

(3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods has been such as to be larcenous under the criminal law.

The crucial question is whether Cates, at the time of the sale of the vehicle to Walt Asher, had title that was void or instead title that was voidable. The controlling case is *Midway Auto Sales v. Clarkson, supra,* where we held that one who obtains property by fraud acquires voidable title and therefore has power to transfer good title to a good-faith purchaser for value; even where delivery is procured through criminal fraud, voidable title passes. Here, it is likely that Cates obtained the duplicate title by criminal fraud but, even so, the sale to Asher gave Asher voidable title, *Midway Auto Sales, supra,* and the subsequent purchasers therefore were empowered to transfer good title pursuant to Ark.Code Ann. § 4–2–403(1)(d) (Repl. 2001).

█ Appellant attempts to characterize the forgery and subsequent sale of the auto as theft,[1] but all instances of obtaining property through criminal fraud could be so characterized. Appellant also cites cases from the courts of New York and Texas holding that a title document procured through fraud can pass only void title to subsequent purchasers, and asks us to adopt this rule on public policy grounds. We decline to do so. Appellant, and used-car dealers in general, are beneficiaries of the provision in section 4–2–403(1) allowing good-faith purchasers to pass good title even when they have been defrauded in obtaining the goods that they sell. The assurance that the purchaser of second-hand goods will not be subject to potential claims by those in the chain of title that may have been victims of fraud gives buyers of used vehicles confidence that the transaction will be binding and secure, thereby increasing both the value of the individual vehicle and volume of used-vehicle sales in general. We think that confidence in documents of title issued by the State likewise benefits the business interests of used-car dealers. As beneficiaries of these assurances to buyers, and as the parties best equipped to investigate title irregularities, we think that the risk of forged title documents can and should be borne by dealers rather than purchasers.

Affirmed.

GLADWIN, J., agrees.

GLOVER, J., concurs.

DAVID M. GLOVER, Judge, concurring.

I join the majority in affirming the trial judge for correctly applying current law to undisputed facts. However, I disagree with the majority's dicta regarding which party is best equipped to investigate title irregularities and to bear the risk of forged title documents. Here, the basic

---

1. Absent exigent circumstances, one who purchases from a thief acquires no title as against the true owner. *Eureka Springs Sales Co. v. Ward,* 226 Ark. 424, 290 S.W.2d 434 (1956).

facts were stipulated. Though this case involves the sale and the multiple resale of one used vehicle, it centers on the handling by the Department of Finance and Administration (DFA) of a forged "State of Arkansas Official Release of Lien on Permission to Issue a Replacement Title." Before us, the parties are the initial seller, a used-car dealership, and after two intermediate sales, the final buyer. At trial, neither side alleged wrongdoing by the other.

This case involves an interplay between the sale of goods under our Uniform Commercial Code and the perfection of liens under our uniform motor vehicle act (the "act"). Our interpretation of Arkansas law, although correct, begs for legislative review of Ark.Code Ann. § 27–14–805. This writer finds there is a gap within the Uniform Motor Vehicle Administration, Certificate of Title, and Antitheft Act, Ark. Code Ann. § 27–14–101 *et seq.*, specifically the interaction between section 27–14–909, "Release of lien by lienholder—Disclosure of Information" subsection (b)(2) and section 27–14–805, "Constructive notice." This case turns on the constructive-notice provision, section 805.

Here, the initial seller, the dealer, followed the act and protected the financed balance owed to it by properly perfecting its lien on the title. (§ 27–14–802–804). Before the initial seller received final payment and satisfied its lien (§ 27–14–909(a)), a forged "official" release of lien was presented to DFA, resulting in a new certificate of title showing no lien being issued by DFA pursuant to section 805. That action on the part of a single DFA employee, activated the constructive-notice of section 805 (which is not actual notice) to the initial seller, the dealer, who in good faith and full reliance on the uniform act had perfected its title retaining a lien under the sister sections 802–804 of the act.

It is contemplated under the act that local DFA revenue-office employees are to serve the gatekeeper function to protect or release otherwise valid liens against vehicle titles on file with that agency. In this case, the forged "official" release of lien that was presented to the DFA revenue-office employee bore an unknown, unverified signature by an imposter who did not even indicate above his signature that he was acting in an agency or representative capacity of the dealer whose name and address also appeared at the top of the one-page "official" document offered. At the least, if constructive notice, instead of actual notice, is all that is required to be given to the lienholder when his valid lien is released, the constructive-notice statutorily imposed language should be bolstered by the requirement of more elaborate verification of identification, authority, and representation. Sellers and buyers are entitled to equal confidence in the documents of title. Sellers include new-car dealers, used-car dealers, financial institutions and individuals, all of whom are also likely lenders with perfected liens. The buyer's confidence in the validity of the certificate of title (issued through a local revenue office) should not exceed the seller's confidence in the security afforded by a perfected lien against the title (also filed at a local revenue office). Even "lawyers and used-car dealers" need protection on occasion. The task of equally protecting legitimate interests of both buyers and sellers of used motor vehicles is a legislative function.