2011 Ark. App. 189

**Charles R. MASON, Jr., Appellant**

v.

**David MITCHAM, Appellee.**

No. CA 10–228.

Court of Appeals of Arkansas.

March 9, 2011.

James Marvin Pratt, Jr., Camden, Brian Gene Brooks, Greenbrier, for appellant.

Robert Lamar Depper, Jr., El Dorado, for appellee.

ROBERT J. GLADWIN, Judge.

Appellant Charles Mason appeals the October 6, 2009 judgment filed by the Union County Circuit Court in favor of appellee David Mitcham. Appellant argues that the circuit court erred by (1) applying the incorrect legal standard, and (2) ignoring an undisputed fact. We find merit in appellant's argument and reverse.

This appeal involves a products-liability case about a trailer that broke. Appellee David Mitcham bought the trailer from appellant Charles Mason for $14,000. The trailer is known as a double-bunk trailer, which is made by welding I-beams together and attaching upright "bolsters" to the frame in which to hold logs. In order for the trailer to sit flat when hooked to a truck, the front portions of the long I-beams are notched out. This notching out causes a weakness in the trailer's frame that can cause a break. In order to prevent such a break, the trailer must be loaded in a particular manner, either by loading short logs centered over the wheel bases in the front and the back, or by loading longer logs with the weight distributed fully over the wheel bases. Conversely, if the trailer is "center loaded," with the logs centered short of the first bolster, the trailer will eventually break at the weakened area. This weakness appears to be an industry-wide issue and not specific to the trailers made by appellant.

It is undisputed that appellant constructed the trailer that is the subject of the litigation. It is also undisputed that this trailer broke because it was center loaded. Appellant contends that he informed appellee of the trailer's limitations and explained that it should not be center loaded. Appellee's own testimony indicated that he knew not to center load the trailer even prior to the warning. Appellant claims that it is also undisputed that appellee personally loaded this particular trailer with the load being carried at the time it broke. But appellee asserts that a more accurate statement is that he testified that he did not know who loaded the trailer; that either he or an employee could have loaded it.

After a bench trial, the circuit court issued a judgment on October 6, 2009, setting forth its findings and conclusions in favor of appellee. The judgment defined the issue as "whether the design utilized by Mason was inherently defective to such an extent as to render Mason liable." The judgment does not mention that the defect must render the trailer "unreasonably dangerous" but does include a finding that the trailer was "inherently defective" because of the weakness where the I-beams were notched. The circuit court further found that the warning to appellee was not sufficient to cure the defect because someone other than appellee could load the trailer. Finally, the judgment includes a finding that "an unidentified crew member loaded the logs onto the second and third set of bolsters, centering the logs on the trailer." A timely notice of appeal was filed on November 5, 2009, and this appeal followed.

When a case is tried by a circuit court sitting without a jury, our inquiry on appeal is not whether there is substantial evidence to support the factual findings of the court, but whether the findings are

clearly erroneous, or clearly against the preponderance of the evidence. *Pine Meadow Autoflex, LLC v. Taylor*, 104 Ark. App. 262, 290 S.W.3d 626 (2009). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, when considering all of the evidence, is left with a definite and firm conviction that a mistake has been committed. *Robinson v. Villines*, 2009 Ark. 632, 362 S.W.3d 870. In conducting its review of a circuit court's findings of fact, we consider the evidence and all reasonable inferences therefrom in the light most favorable to the appellee. *Murphy v. City of West Memphis*, 352 Ark. 315, 101 S.W.3d 221 (2003). Appellate courts give due regard to the opportunity and superior position of the circuit court to determine the credibility of the witnesses. *See Combs v. Stewart*, 374 Ark. 409, 288 S.W.3d 574 (2008). However, a circuit court's conclusion on a question of law is reviewed de novo and is given no deference on appeal. *Id.*

■ The law is clear that in order to recover under a products-liability claim, a defect alone is not enough; the defect must render the product "unreasonably dangerous" as well. *Berkeley Pump Co. v. Reed–Joseph Land Co.*, 279 Ark. 384, 653 S.W.2d 128 (1983). Appellant argues that the circuit court wholly ignored the "unreasonably-dangerous" element. The strict products-liability claim asserted by appellee had four elements: (1) damages; (2) proof that appellant was a manufacturer of the product; (3) proof that the product was supplied in a defective condition that rendered it unreasonably dangerous; and (4) proof that the defective condition was a proximate cause of the damages. AMI Civil 1008; *Berkeley Pump*, 279 Ark. at 391–92, 653 S.W.2d at 131–32.

■ Appellant contends that Arkansas law could not be clearer in this regard—specifically, that the unreasonably-danger-

ous element is necessary for any recovery. Our supreme court explained in *Berkeley Pump, supra*, that our law is based on section 402A of the Restatement (Second) of Torts. Explicit in the language of section 402A is that a product must be both defective and unreasonably dangerous. *See Berkeley Pump*, 279 Ark. at 391, 653 S.W.2d at 131. A defective condition alone is not enough. The defective condition must render the product "unreasonably dangerous." *Id.* Appellant maintains that the circuit court did not go far enough in its findings because the issue in this case was whether the design was defective so as to render the trailer unreasonably dangerous. The circuit court failed to make any finding whatsoever with respect to the "unreasonably-dangerous element" of the cause of action, finding only that the product was inherently defective. Appellant urges that is simply not enough to support the judgment against him.

■ When cases are tried to the bench, the only time a circuit court has to make specific findings of fact and conclusions of law is when a party makes such a request of the court prior to the judgment being entered. Ark. R. Civ. P. 52(a) (2010). In the instant case, the circuit court heard all the evidence and ruled that appellant was liable under a theory of products liability absent a request by appellant under Rule 52 of the Arkansas Rules of Civil Procedure to make specific findings of fact and conclusions of law. Under our standard of review, we hold that based upon the circuit court's ruling in favor of appellee, it inferred from the evidence that the trailer was not only defective but also unreasonably dangerous. We further hold that the circuit court's finding was clearly erroneous.

In *Berkeley Pump*, our supreme court noted that both the products-liability statute and section 402A "define unreasonably

dangerous as requiring something *beyond* that contemplated by the ordinary and reasonable buyer, taking into account any special knowledge of the buyer concerning characteristics, propensities, risks, dangers, and proper and improper uses of the product." *Berkeley Pump*, 279 Ark. at 394, 653 S.W.2d at 133 (emphasis in original). Because the buyer in *Berkeley Pump* was a knowledgeable buyer who should have contemplated that the pumps might not perform adequately, the pumps could not be considered "unreasonably dangerous." *See also* Ark.Code Ann. § 16–116–102(7)(A) (Supp.2009) (defining "unreasonably dangerous" based, in part, on the consumer's "special knowledge, training, or experience").

■ Our supreme court in *Berkeley Pump* appears to have adopted a subjective approach to the "consumer expectations test" for determining when a product is unreasonably dangerous. Consumer expectations, as defined by *Berkeley Pump*, are the expectations of the actual plaintiff sitting in the courtroom. Here, the evidence indicates that the actual plaintiff sitting in the courtroom, i.e., appellee, had actual knowledge of the trailer's potential limitations; thus the ability of the product to be "unreasonably dangerous" is at least undercut and may be destroyed altogether. The record before us supports that appellee knew that the trailer he bought should not be center loaded. Nevertheless, he either center loaded the trailer himself or supervised an employee doing so.

Evidence was presented to the circuit court regarding the potential danger of the trailer. Appellant testified as to the construction of the product and explained that the product has a weak point in it that necessitates that logs be loaded on this type of trailer in a particular fashion and that, if logs are loaded in any way other than the particular fashion, the trailer will break at its weak point. Appellant also testified that he was aware that trailers of this type are often loaded incorrectly by users of the product. Appellant testified that he did not like manufacturing these trailers because of the defect, but he did manufacture them despite the defect because his customers wanted such trailers. We acknowledge that evidence was presented that supports the circuit court's findings. But when considering all of the evidence under the subjective approach to the consumer-expectations test for determining when a product is unreasonably dangerous, we are indeed left with a definite and firm conviction that a mistake has been committed. Accordingly, we reverse the circuit court's order with respect to liability.

■ Appellant also argues that the circuit court incorrectly based its conclusions on the erroneous finding that someone other than appellee loaded the trailer on this particular day. He argues that the evidence clearly indicates that appellee is the person who loaded the trailer, on the day in question, with the load that ultimately broke the trailer. The testimony of appellee's employee, Emmett Maroney, indicated that he was pulling the trailer when it broke. On cross-examination, Maroney testified that "David Mitcham loaded the trailer." Then again, when asked how he knew he was "legal," Maroney said, "Mr. Mitcham would be better to know that. He's the one that loaded the trailer; I was just the driver to the mill." Thus, appellee's agent and employee definitively testified that appellee loaded this trailer.

Appellee, however, points to his own testimony in support of his contention that someone else may have loaded the trailer. On direct examination, appellee testified, "I was thinking Mr. Maroney loaded the trailer because I was delimbing, putting logs behind him. Mr. Maroney said he

didn't load the trailer but, but I couldn't argue, that's been nine years ago." Then on cross-examination, appellee testified, "I don't remember whether I loaded the logs or not. I can't tell you if I loaded the logs or if Ken loaded them. I don't dispute his testimony."

Appellee acknowledged that he could not dispute his own employee's testimony that he, appellee, loaded the trailer. The only evidence of who did load the trailer was Maroney's testimony, and he specifically testified that appellee did. Irrespective of which person actually loaded the logs onto the trailer, both appellee and his employee were present to observe the improper center loading. We agree that, at a minimum, appellee knew that this trailer was |₈center loaded and was present for the loading. Accordingly, the circuit court's finding is clearly against the preponderance of the evidence.

Reversed.

VAUGHT, C.J., and MARTIN, J., agree.