2013 Ark. App. 306

SOUTHERN BUILDING SERVICES, INC., Appellant/Cross–Appellee

v.

CITY OF FORT SMITH, Arkansas, Appellee/Cross–Appellant.

No. CA 12–503.

Court of Appeals of Arkansas.

May 8, 2013.

Rehearing Denied June 26, 2013.

Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., Rogers, by: Marshall S. Ney and Emily Milholen Reynolds, for appellant.

Daily & Woods, PLLC, Fort Smith, by: Jerry L. Canfield and Douglas M. Carson, for appellee.

BILL H. WALMSEY, Judge.

This case involves a construction dispute between appellant Southern Building Services, Inc. ("SBS"), and appellee City of Fort Smith, Arkansas ("City"). Following a three-day bench trial, the circuit court awarded the City liquidated damages of $134,250, plus interest at the rate of 6% per annum from June 18, 2008, for SBS's failure to timely achieve substantial completion of the project. It also awarded the City $30,999.96 for the cost of completing the project and $51,262 for attorney's fees. On appeal, SBS argues that the circuit court erred in each of those awards. The City cross-appeals, arguing that the court erred in not awarding the City liquidated damages for SBS's failure to achieve final completion of the contract within fifteen days after substantial completion. We affirm in part, reverse and remand in part, and vacate in part on direct appeal. We affirm on cross-appeal.

On April 17, 2007, SBS entered into a contract with the City to construct six structures at Lake Shepherd Springs Recreational Area (the project): the Pool House, Upper Bath House, Lower Bath House, Marina Office, Day–Use Pavilion, and Day–Use Restroom. The contract required substantial completion of the Day–Use Restroom within 120 calendar days of notice to proceed and of the other five structures within 210 calendar days from notice to proceed. Final completion was required within fifteen days of substantial completion. The contract provided specific, different liquidated damages for failure to meet the substantial-completion deadlines for the Day–Use Restroom ($250 per day) and for the other five structures ($750 per day). A third liquidated-damage amount of $200 per day was provided for failure to meet the final completion deadline. The engineering firm overseeing construction and acting as the City's agent and representative was Mickle Wagner Coleman, Inc., with Bobby Aldridge as the lead engineer. The architectural firm overseeing the project was Tim A. Risley and Associates.

A notice to proceed was issued on May 11, 2007, and SBS commenced work on May 14, 2007. According to SBS, it encountered many delays beyond its control, such as weather, interference by other contractors, utility issues, layouts and elevations, and faulty design, among others. By March 2008, it had reached substantial completion of the Day–Use Restroom, and

substantial completion of the other five structures occurred on May 5, 2008. Under the contract, the engineer acted for the City, and the City was to execute change orders recommended by the engineer. The contract price could be changed only by change order, and the engineer and the City directed that all changes of time and price would be approved in one final reconciliation.

In June 2008, inspection of the completed project was scheduled, and the City advised the bonding company that it would be authorizing final payment. In July 2008, SBS was given what it calls the final change order to indicate that work under the contract was complete. This final change order reflected an approved adjustment to the contract of $15,401, making the total contract price $1,698,401. It also showed that thirty-two additional days had been added to the contract time and that liquidated damages had not been assessed. Liquidated damages were later assessed at $134,250, although they did not appear in the final change order. SBS requested a waiver of the liquidated damages and additional contract time. In December 2008, SBS was informed that it had agreed to the final change order and was contractually bound by the order.

By resolution adopted on March 16, 2010, the City terminated the contract and assessed liquidated damages against SBS in the amount of $134,250 for failure to timely achieve the substantial-completion deadlines for the six buildings. The resolution also assessed liquidated damages in the amount of $156,600 for failure to achieve final completion of the contract work.

On March 11, 2010, SBS sued the City for an additional sum of $183,701.22 alleg-edly owed, together with reasonable attorney's fees.[1] The complaint asserted causes of action based on breach of contract, promissory estoppel, constructive fraud, and equitable estoppel. The City answered and counterclaimed for liquidated damages for delay in achieving both substantial completion and final completion and for the cost of completing SBS's work. In its answer and counterclaim, the City contended that work costing the sum of $20,000 to complete the contract remained undone. The City sought liquidated damages totaling $290,850 and, after applying a credit of $183,701.22 for "sums due for work accomplished under the contract," asserted entitlement to the sum of $107,148.78, together with prejudgment interest and a reasonable attorney's fee.

After both parties moved for and were denied summary judgment, the case proceeded to a three-day bench trial held in February 2012. The court filed its written judgment on February 22, 2012. In it, the court characterized "the issue [as] a simple one, whether [SBS] should be assessed liquidated damages and if so in what amount." The court found that, when it came to a time-related change order, the City had told SBS to document the delays and they would be addressed at the end of the contract if they could not be resolved within fifteen days. However, the court also found that SBS failed to do that and "just chose not to make substantiated requests for additional time until November 26, 2008, and at trial." Although SBS contended that the time frame for completion of the projects excluded weekends and holidays, the court noted that there was testimony that SBS did in fact work on some weekends. SBS's contention that it

---

**1.** This is the difference between the final contract price and the money previously paid to SBS.

was entitled to additional days because of various reasons, including weather, lack of supervision, other contractors, and dumpster and electrical-related problems, was rejected because SBS, by its own admission, failed to document the delays. Although the contract required the job being finally completed within fifteen days of substantial completion, the court found that SBS failed to do so. The court found it "amazing" that SBS either could not or would not complete the multiple punch lists. The court concluded that the City was entitled to liquidated damages in the sum of $134,250 plus interest at the rate of 6% per annum from June 18, 2008.

Turning to the City's counterclaim, the court found that, despite the difficulty in getting SBS to complete the job, the City failed to avail itself of its right to terminate the contract until March 2010.[2] The court noted that the law was clear that an injured party cannot sit idly by and allow liquidated damages to increase. According to the court, the breach occurred in May 2008, but the City sat idly by and allowed liquidated damages to escalate. The court concluded that the City was entitled to judgment for $30,999.66 for remedial work to complete the project and that $20,000 of this amount had been withheld by the City.[3] SBS filed its notice of appeal on March 21, 2012. The City filed its notice of cross-appeal on March 30, 2012.

The City filed its motion for attorney's fees on March 7, 2012, seeking $51,262 for fees. By order entered on April 13, 2012, the circuit court awarded the City $51,262 in attorney's fees, to be paid within sixty

days. SBS filed its notice of appeal from the fee order on May 11, 2012.

In bench trials, the standard of review on appeal is not whether there is any substantial evidence to support the finding of the court, but whether the court's findings were clearly erroneous or clearly against the preponderance of the evidence. *Pine Meadow Autoflex, LLC v. Taylor,* 104 Ark.App. 262, 290 S.W.3d 626 (2009). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *First Nat'l Bank v. Garner,* 86 Ark.App. 213, 167 S.W.3d 664 (2004). Recognition must be given to the circuit court's superior opportunity to determine the credibility of witnesses and the weight to be given to their testimony. *Brown v. Blake,* 86 Ark. App. 107, 161 S.W.3d 298 (2004).

### I. *Liquidated Damages*

SBS first argues that the circuit court erred in awarding liquidated damages to the City for several reasons, including that the City failed to assess liquidated damages in the final change order; that the City had accepted the final change order; that the City improperly prepared the final pay application and changed the required pay-application form, thereby breaching the contract; and that the City also breached its alternative procedure for closing out the contract. SBS also argues as part of this point that the City failed to include additional days for delays caused by events beyond SBS's control.

---

2. As explained *infra,* although the court believed that it was addressing SBS's complaint and the City's counterclaim, all the issues addressed by the court were related to the City's counterclaim.

3. In its findings, the circuit court found that the City was entitled to $30,999.66 for remedial work to complete the contract. However, later the sum was listed as $39,999.66. At oral argument, the parties stated that this was merely a typographical mistake.

SBS spends a great deal of its brief arguing that the City breached the contract by failing to use the forms and procedures specified in the contract for the assessment of liquidated damages and closing out the contract. The circuit court made two findings regarding these issues: (1) the City never executed the change order because SBS never completed the work; and (2) SBS would not have signed any change order assessing liquidated damages, making the issue of which party was supposed to prepare the documents irrelevant. Instead of explaining how the City's failure to follow the correct forms and procedures precludes its liability for liquidated damages for work that was not timely completed, SBS argues that it was entitled to additional days to offset the liquidated damages. Relatedly, the circuit court found that SBS failed to document its requests for additional time and relied on the admission of SBS's president that he failed to document his requests. SBS also argues that the City treated it differently from other contractors who had liquidated damages either reduced or waived entirely. Although the court felt that SBS might have been treated differently or more harshly than other contractors, it reiterated its finding that SBS failed to document its requests for additional time.

At trial, Brian Puckett of SBS testified that there were extensive delays beyond SBS's control, including the City wanting SBS to undertake tasks that were assigned by the contract to the City. There were also delays resulting from weather, problems with moisture on the site, problems with utilities needing to be relocated, problems with other contractors, no plans being available at times, and problems resulting

from the failure of the engineer to be on site.

Some of the correspondence SBS cites in support of its argument relates to the change orders that were approved, making it difficult to determine whether SBS had, in fact, documented the delays for which it is claiming additional time. SBS states that it was undisputed that it was supposed to document the delays as they occurred so that the issue could be resolved at the conclusion of the project. It is also undisputed that SBS submitted ten requests for change orders that involved additional days and that these requests were approved, although some were in amounts different from the requested amount. SBS acknowledged that it had submitted no other written requests for additional time prior to achieving substantial completion of the project in May 2008.

Because SBS did not submit any additional requests for additional days to complete the project in accordance with the terms of the contract, it is in no position to argue that the City should have given it those additional days. Accordingly, the circuit court did not clearly err in failing to give SBS those days.

█ We do, however, find clear error with respect to one aspect of the award of liquidated damages: the circuit court's award of prejudgment interest at 6% from June 18, 2008. There are two problems with this award. First, the City only sought prejudgment interest from March 16, 2010, the date it terminated the contract. Second, the City has had the use and possession of $183,701.22 it admits was due SBS since 2008.[4] SBS has consistently argued that it was entitled to be paid for the work it performed. It filed this action

4. There is no merit to the City's contention at oral argument that it was entitled to withhold the approximately $183,000 as a retainage.

The contract limits the retainage to 5% of the contract price. In this case, a proper retainage would be approximately $84,000.

to recover the sums due it. It argued in its briefs to the circuit court that it was entitled to be paid. The City admitted that SBS was still owed for work accomplished under the contract in the so-called final change order, in the City's answer and counterclaim and amended answer and counterclaim, in the City's posttrial brief, and at oral argument before this court. However, the circuit court failed to offset the City's award against the amount admittedly owed to SBS. We therefore remand the case to the circuit court to apply the setoff.

## II. *Completion Damages*

Next, SBS argues that the circuit court erred in awarding the City additional monies to complete the contract. Under this point, SBS contends that the City was attempting to close out the contract in June and July 2008 and argued that only $1400 worth of work remained to be performed. Brian Puckett testified that SBS had completed the punch-list items. Based on this assertion, the City advised the bonding company that the project was substantially complete, with only the final inspection remaining. This position contrasted with the City's assertion at trial that $30,999.96 worth of work remained unfinished. The City also points to other evidence that it says supports the circuit court's ruling. For example, Jack Dillon, an engineer and the City's assistant director of utilities, explained his statement to the bonding company as being based on a representation from SBS that the punch-list items were completed. Dillon also said that SBS was continuing to work on the project. In addition, the City argues that the documents prepared to close out the contract in June and July 2008 cannot be

used because they were never executed and SBS never completed the work. Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous. *Rymor Builders, Inc. v. Tanglewood Plumbing Co.*, 100 Ark.App. 141, 265 S.W.3d 151 (2007). Indeed, the circuit court made an express finding that Dillon was the most candid witness. We defer to the circuit court's superior position in credibility determinations. *Brown, supra.*

## III. *Attorney's Fees*

In light of our remand to the circuit court to apply the setoff, we need not discuss SBS's third point in which it argues that the circuit court abused its discretion in awarding attorney's fees to the City. We vacate the award of attorney's fees, and upon remand and entry of a new judgment, the circuit court may redetermine whether there is a prevailing party who is entitled to attorney's fees.

## IV. *Cross–Appeal*

We now turn to the City's cross-appeal wherein it argues that the circuit court erred in not awarding it liquidated damages for SBS's failure to achieve final completion of the contract work within fifteen days after substantial completion. The City claims final-completion liquidated damages at $200 per day from May 21, 2008, through the City's termination of the contract on March 16, 2010, for total liquidated damages of $132,800.[5] The circuit court found that the City sat idly by and allowed the liquidated damages to accrue without taking action to mitigate its damages. The City contends that the circuit court erred because SBS never achieved final completion of the project. Specifical-

5.   This figure differs from the amount the City sought in its answer and counterclaim. The City sought $156,600 in liquidated damages in its resolution terminating the contract. No explanation for the difference is given.

ly, the City argues that contractual provisions calling for liquidated damages are enforceable and, despite the court's finding that it failed to mitigate its damages, it was entitled to some award of liquidated damages. The circuit court was correct.

■■■ The doctrine of mitigation of damages applies in both tort and contract cases. *Bill C. ⌐Harris Constr. Co. v. Powers*, 262 Ark. 96, 554 S.W.2d 332 (1977); D. Dobbs, *Remedies* § 3.7 at 187 (1973); *compare Restatement (Second) of Torts* § 918 (1979), *with Restatement (Second) of Contracts* § 350 (1979). This duty to mitigate damages is sometimes called the "doctrine of avoidable consequences." It limits the amount of recoverable damages in that a party cannot recover damages resulting from consequences that he could reasonably have avoided by reasonable care, effort, or expenditure. *Powers, supra.* The question of whether the plaintiff acted reasonably in mitigating damages and the amount of damages that could have been avoided is for the trier of fact. *Id.; Taylor v. George*, 92 Ark.App. 264, 212 S.W.3d 17 (2005); *Quality Truck Equip. Co. v. Layman*, 51 Ark.App. 195, 912 S.W.2d 18 (1995).

It has long been held that an injured party cannot collect both actual damages and liquidated damages because liquidated damages serve as a contractual substitute for actual damages. *Shoptaw v. Puterbaugh*, 263 Ark. 778, 567 S.W.2d 288 (1978); *Robbins v. Plant*, 174 Ark. 639, 297 S.W. 1027 (1927). Here, the City recovered approximately $31,000 as the cost to complete the project (the City had already withheld $20,000 of the $31,000). Moreover, Jack Dillon testified that there was no delay in the opening of the project and that the City was not harmed by the actions of SBS. Thus it would be unfair to SBS and a windfall to the City to allow recovery of both actual damages to complete the work and liquidated damages for SBS's failure to achieve final completion of the project. *See Phillips v. Ben M. Hogan Co.*, 267 Ark. 1104, 594 S.W.2d 39 (Ark. App.1980).

Affirmed in part; reversed and remanded in part for further proceedings consistent with this opinion; and vacated in part on direct appeal. Affirmed on cross-appeal.

WHITEAKER, J., agrees.

GLOVER, J., concurs.