
SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-16-1099

| | | |
|---|---|---|
| LARA THOMPSON | | **Opinion Delivered** September 6, 2017 |
| | APPELLANT | |
| | | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT |
| V. | | [NO. 26CV-15-2] |
| | | |
| | | HONORABLE MARCIA R. HEARNSBERGER, JUDGE |
| RACHEL BROUSSARD | | |
| | APPELLEE | AFFIRMED |

---

**PHILLIP T. WHITEAKER, Judge**

Appellant Lara Thompson appeals the decision of the Garland County Circuit Court awarding appellee Rachel Broussard $7,111 plus attorney's fees of $2,000. Finding no error, we affirm.

## I. *Background*

Thompson was the owner of Summit Gymnastics, a gymnastics studio. She agreed to sell the business to Broussard. The parties executed a document entitled "Agreement for the Sale and Purchase of Assets and Bill of Sale" in October 2014. Broussard agreed to pay Thompson $48,000 for the business by making installments of $1,500 per month for thirty-six months. Broussard made a down payment of $4,500, and Thompson kept $1,000 in receivables after the sale was made, for a total initial payment of $5,500. In addition, Thompson applied $345 in salary she owed to Broussard (who had been employed by the

SLIP OPINION

studio), and Broussard made payments on two loans—one for $152 and the other for $1,114—that the studio owed to Diamond Lakes Federal Credit Union.

Broussard operated the gymnastics studio for two months—November and December 2014. The parties began to have disputes early on, however, and by December, Thompson was threatening to sue Broussard for breach of contract. Broussard returned ownership of the studio to Thompson on January 1, 2015. Thompson nonetheless filed a breach–of–contract suit against Broussard on January 2, 2015, alleging that Broussard had failed to make the required monthly payments. Thompson demanded that Broussard pay her the entire purchase price of $48,000. Broussard answered and filed a counterclaim, alleging that Thompson had failed to disclose that she did not own 100 percent of the business's assets. Broussard sought cancellation of the contract and return of the money she had paid to Thompson.

Broussard eventually filed a motion for summary judgment, contending that the contract between the parties had been rescinded and that she was therefore entitled to a refund of the amounts she had paid toward the purchase of the business, totaling $7,111. The circuit court agreed with Broussard and granted summary judgment. The court found that the parties had rescinded the contract, that Thompson had retaken the business, and that Broussard had paid Thompson or made payments on her behalf totaling $7,111. The court noted, however, that there was still a dispute as to whether Thompson was entitled to an offset for any net profits Broussard might have earned during the two months that she ran the business.

The circuit court later held a hearing on Thompson's request for an offset. After hearing testimony and taking evidence, the circuit court concluded that Thompson had not

met her burden of proof that Broussard made a profit for which Thompson would be entitled to a credit, and it therefore ordered that Thompson's complaint be dismissed. The court entered judgment for Broussard in the amount of $7,111, plus costs and interest. Additionally, the court awarded Broussard $2,000 in attorney's fees. Thompson subsequently filed a timely notice of appeal.

## II. *Thompson's Entitlement to an Offset*

In her first argument on appeal, Thompson argues that the circuit court erred in finding that she failed to meet her burden of proof on the issue of an offset. Our standard of review on appeal in civil bench trials is whether the circuit court's findings were clearly erroneous or clearly against a preponderance of the evidence. *Patel v. Patel*, 2015 Ark. App. 726, at 2, 479 S.W.3d 580, 582; *Tadlock v. Moncus*, 2013 Ark. App. 363, at 3, 428 S.W.3d 526, 529. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with a firm conviction that a mistake has been committed. *Patel, supra.* We must give recognition to the circuit court's superior opportunity to determine the credibility of witnesses and the weight to be given to their testimony. *S. Bldg. Servs., Inc. v. City of Ft. Smith*, 2013 Ark. App. 306, at 6, 427 S.W.3d 763, 766.

Before addressing the merits of Thompson's argument, we briefly set out the general law as it relates to rescission. Our supreme court has stated that rescission is cognizable both at law and in equity. *Maumelle Co. v. Eskola*, 315 Ark. 25, 29, 865 S.W.2d 272, 274 (1993). Equitable rescission is distinct from rescission at law in that equitable rescission requires the affirmative powers of an equity court to rescind or undo the contract, whereas in rescission

SLIP OPINION

at law, the court merely grants restitution after the party seeking it has achieved rescission by his or her own acts. *Phelps v. U.S. Life Credit Life Ins. Co.*, 336 Ark. 257, 984 S.W.2d 425 (1999); *Moreland v. Dodds*, 2012 Ark. App. 10, 388 S.W.3d 73.

Here, the parties agree that the agreement for Broussard to purchase the business from Thompson was legally rescinded when Broussard returned the venture to Thompson. Thompson does not appear to dispute that the $7,111 judgment against her accurately represents the funds that Broussard expended during her time as owner of the business. She maintains, however, that she met her burden of proof on the issue of an offset. We therefore turn our attention to the evidence presented at the offset hearing.

At the offset hearing, Thompson presented evidence consisting of testimony and bank statements. Broussard testified that she opened a bank account when she bought the business and that she used the account for both business and personal use.[1] She stated that she deposited $1,253 in November 2014, $8,207 in December, and $2,174 in January 2015, although she pointed out that she did not have control over the business during the last month. Broussard acknowledged that the bank statements showed deposits and credits, but she said some of those funds were her personal money. Broussard testified about the expenses of running the business during the two months she had owned it, explaining how much was spent on payroll, utilities, rent, supplies, and other necessities, but she said that she could not pay the business's bills. During the two months she ran the gym, Broussard said, she "did not make a profit . . . . [she] lost money." That was one of the reasons she returned the gym to Thompson.

---

[1]Broussard, who was eighteen years old when she bought the gym, said that "nobody told [her] that was a bad idea until after."

Thompson also testified at the hearing. She admitted that for the years 2013, 2014, and 2015, the business lost money.

On appeal, Thompson argues that the bank-statement evidence introduced at the hearing proved that Broussard made a profit on the business and that she (Thompson) should be entitled to an offset equal to those amounts.[2] Broussard responds that the bank statements showed only money that was deposited into the account and expenses that were paid out of it. She denies that all the money deposited into the account was "income," as Thompson describes it, and she notes her own testimony that she deposited personal funds into the account as well as funds received via the business.

Here, the circuit court received evidence of bank deposits and business expenses. The circuit court additionally heard testimony from both Broussard and Thompson that the business was not profitable at all. It was well within the circuit court's purview to deem both women's testimony credible on the issue of whether the business was ever profitable. *See S. Bldg. Servs., Inc.*, *supra*. We therefore cannot say that the court's findings were clearly erroneous on this point.

### III. *Attorney's Fees*

In her second point on appeal, Thompson argues that the circuit court erred in awarding $2,000 in attorney's fees to Broussard. We will not disturb an award of attorney's

---

[2]Thompson also cites the bank-account balance from January 2015; however, Broussard returned the business to Thompson on January 1, 2015, so any money in the bank from that month would not be attributable to Broussard in any event.

fees absent an abuse of discretion. *Chambers v. Ratcliff*, 2009 Ark. App. 377, at 4, 309 S.W.3d 224, 226–27 (citing *Artman v. Hoy*, 370 Ark. 131, 257 S.W.3d 864 (2007)).

Thompson argues that in an action for rescission, attorney's fees are not available pursuant to Arkansas Code Annotated section 16-22-308 (Repl. 1999). Whether an award of attorney's fees to a prevailing party is appropriate under section 16-22-308 depends on whether the case is one primarily based on breach of contract. *Gladden v. Trs. of the Pruitt Family Tr.*, 2015 Ark. App. 680, at 11, 477 S.W.3d 530, 536 (awarding attorney's fees in a contract-rescission case); *Jiles v. Union Planters Bank*, 90 Ark. App. 245, 247, 205 S.W.3d 187, 189 (2005). Thompson maintains that the circuit court's judgment referenced only the rescission of the parties' agreement and not the underlying contract itself. Because there was no longer any "contract" by the time of the court's ruling, Thompson suggests that Broussard was therefore not a "prevailing party" in a breach-of-contract action under section 16-22-308.

In support of her argument, Thompson relies exclusively on *Barnhart v. City of Fayetteville*, 335 Ark. 57, 977 S.W.2d 225 (1998). *Barnhart*, however, is inapposite. *Barnhart* was an illegal-exaction case in which the attorney was awarded fees under Arkansas Code Annotated section 26-35-902(a) (Repl. 1997), which authorizes an award of attorney's fees to winning litigants in illegal-exaction cases. 335 Ark. at 59, 977 S.W.2d at 226. Appellant Barnhart, however, moved for additional fees under section 16-22-308. The circuit court denied the request, finding that her contention that her action "concerned a contract" did not make it an action on a contract or a breach-of-contract case. *Id.* at 60, 977 S.W.2d at 226. The supreme court affirmed, holding that the complaint was not primarily based on a contract

6

but on an illegal exaction and that Barnhart failed to raise any breach–of–contract claim or request damages in her earlier case on appeal. *Id.* at 61, 977 S.W.2d at 227. In short, the court rejected Barnhart's attempt to recharacterize her case as one that sounded in contract. *Id.*

On the other hand, in *Beck v. Inter City Transportation, Inc.*, 2012 Ark. App. 370, 417 S.W.3d 740, this court distinguished *Barnhart* and explained that rescission is a remedy that may be used in either contract cases or tort cases:

> It is basic contract law that where there is a material breach of a contract, substantial nonperformance, and entire or substantial failure of consideration, the injured party is entitled to rescission of the contract and restitution and recovery back of money paid. *Econ. Swimming Pool Co. v. Freeling*, 236 Ark. 888, 891, 370 S.W.2d 438, 440 (1963). *Whether an award of attorney's fees is appropriate under Ark. Code Ann. § 16-22-308 depends not on whether the remedy of rescission was granted but on whether the case is one primarily based on breach of contract.*

*Beck*, 2012 Ark. App. 370, at 8, 417 S.W.3d at 745–46 (emphasis added). Therefore, we must look to the gist of the action that Thompson originally brought against Broussard.

Here, Thompson's lawsuit was filed as a breach–of–contract action. It sounded entirely in contract, and the mere fact that the parties agreed to rescind that contract does not defeat the original nature of the action. Because the complaint was brought as a breach–of–contract action, the award of attorney's fees to Broussard, as the prevailing party, was therefore appropriate under section 16-22-308.

Affirmed.

GLOVER and HIXSON, JJ., agree.

*The Applegate Law Firm, PLLC*, by: *Ryan J. Applegate*, for appellant.

*Baker Schulze Murphy & Patterson*, by: *Darryl E. Baker* and *J.G. Schulze*, for appellee.